UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **DAVID STANDLEY** | § | |
| **Plaintiff** | § | |
| | § | |
| **vs.** | § | **CIVIL NO.   14-CV-00977** |
| | § | |
| **MICHAEL S. ROGERS** | § | |
| **UNITED STATES DIRECTOR** | § | |
| **NATIONAL SECURITY AGENCY** | § | |
| **Defendant** | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Now comes Plaintiff, David Standley, and files this Plaintiff's Response to Defendant's Motion for Summary Judgment, and asks the Court to deny Defendant's Motion for Summary Judgment.   In support of this Response Plaintiff shows the Court following:

**I.   FACTS AND PROCEDURAL HISTORY**

1   Mr. David Standley reasserts all facts listed in paragraphs 9 through 56 of Plaintiff's First Amended Complaint and Jury Demand, and the Plaintiff's Statement and Procedural History presented in Plaintiff's Motion for Summary Judgment, incorporates by reference as part of this pleading hereof for all purposes.

2.   Mr. Standley asserts via his First Amended Complaint, as well as the arguments listed in his Motion for Summary Judgment and this Response to Defendant's Motion for Summary Judgement, and attached exhibits that there are disputed facts that:

a.   He received treatment different from other employees under the direct supervision of Mr. John M., Lynn H., Janice W., and Jeffery R. as to request for training, and complaints regarding his co-worker because of his race and in retaliation for his prior EEO activity;

1

b.      Defendants employee's decision to issue him a negative employment evaluation for 2007, place him on a Performance Improvement Plain (PIP) in 2008, recommend the issuance of a letter to remove him as an employee of Defendant, then terminate him were not the products of business necessity but a discriminatory and retaliatory decisions based on his race and in retaliation for his EEOC activity; and

c.      Defendant allowed its employees to create a hostile work environment because of his race and in retaliation for his prior EEO activity.

## II.   ARGUMENTS AND AUTHORITIES

## A.      STANDARD OF REVIEW FOR MOTION FOR SUMMARY JUDGMENT

3.      Summary judgment is proper in a case where there is no genuine issue of material fact.  See Fed.R.Civ.P.56(c); *Celotex Corp v. Catrett*, 477 U.S. 317 (1986).  The moving party bears the burden of proving there is no issue of material fact and it is entitled to judgment as a matter of law.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505 (1986); *Celotex Corp v. Catrett*, at 317.  A Defendant who "seeks summary judgment on a Plaintiff's cause of action must demonstrate the absence of a genuine issue of material fact by submitting summary judgment evidence that negates the existence of a material element" of Plaintiff's claim.  *Celotex Corp.*, at 322-323.

4.      The Court must consider all of the evidence but refrain from making any credibility determinations or weighing the evidence.  *Turner v. Baylor Richardson Med. Ctr.,* 476 F.3d 337, 343 (5th Cir. 2007).  To survive summary judgment filed by Defendant, Plaintiff must establish that there is a genuine issue of material fact."  *Matsushita Elec. Indus v. Zenith Radio Corp*, 475 U.S. 574, 585-586 (1986).  Defendant:

cannot rely on conclusory statements to establish that Plaintiff has not presented evidence on an essential element of her claim.   Rather, Defendant must demonstrate the absence of a genuine factual dispute.   When a motion for summary judgment is made ... an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but

the adverse party's response, by affidavits or as otherwise provided ..., must set forth specific facts showing that there is a genuine issue for trial.   -Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 322, 327.

5.      A Plaintiff can survive summary judgement solely by establishing that the Defendant's offered reasons were pretext simpliciter:

> [p]roof that the Defendant explanation is unworthy of credence is simply on form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive … Thus a plaintiff's prima face case, combined with sufficient evidence to find the employer's asserted justification is false may permit the trier of fact to conclude that the employer unlawfully discriminated.   *Reeves v. Sanderson Plumbing Products, Inc*., 530 U.S. 133, 147-148 (2000).

6.      The Movant must satisfy its burden by submitting summary judgment proof, in the form of affidavits and other form provided pursuant to Federal Rules of Civil Procedure Rule 56, that establishes that the nonmovant cannot establish one element of its cause of action as a matter of law.   Fed. R. Civ. Pro. Rule 56(e)(g); *San Pedro v. U.S.*, 79 F.3d 1065, 1068 (11th Cir. 1996). Fed. R. Civ. Pro. Rule 56(e)(g).   In considering a motion for summary judgment, the Court must examine the facts in the light most favorable to the party opposing the motion.   *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726 (7th Cir. 1999).

## B.      OBJECTIONS TO EVIDENCE OFFERED IN DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT AND DEFENDANT'S STATEMENT OF FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT.

7.      Plaintiff objects to any evidence listed in Defendant's Motion for Summary Judgment and Defendant's Statement of Facts in Support of Motion for Summary Judgment which is based on hearsay or speculation pursuant to the Federal Rule of Evidence.   Fed. R. Evid. §§ 602; 801.   It is well settled in the Fifth Circuit that a party may not attempt to secure a summary judgment based on testimony from a witness using an affidavit that impeaches, without explanation, sworn testimony, as here.   *SWS Erectors, Inc. V. Infax, Inc,* 72 F.3d 489 (5th Cir.

1996); *Anderson v. T.J. Stevens & Co*, 749 F.2d 223, 228 (5th Cir. 1984).   Mr. Standley asserts

that it is a violation of this sixth amendment rights for this Court to consider statements made to

Janice W., Lynn H., and Jeffery R.   *Melendez-Diaz v. Massachusetts*, 129 S.Ct 2527, 2540 (2009).

8.      Mr. Standley asserts that the affidavits and depositions of Janice W., Lynn H., and

Jeffery R. contain statements from third parties which constitute hearsay/ double hearsay.   The

affidavits of Janice W., Lynn H., and Jeffery R. were prepared for the specific purpose of usage at

trial.   All e-mails and other documents prepared by third parties upon which Janice W., Lynn H.,

and Jeffery R. relied are hearsay / double hearsay, and the preparer of the e-mails, memorandum,

or documents must testify.   *Bullcoming v. New Mexico*, 131 S.Ct. 2705, 2716, 2717 (2011).

**1.      Objections for Hearsay and Speculation:**

9.      Mr. Standley objects to the following statements as hearsay and speculation

because the testimony is not based on the personal knowledge of person making the statement:

a.      EEO Affidavit of Lynn H., in which she documented Plaintiff's
        performance problems as extensive, and include complaints **from
        all of his co-workers** on his team, **both military and civilian**, as
        well as **NSA employees from other branches and customers
        specifically as to the following dates;**
        1.      April 9, 2007: **Statements made by Sarah to Lynn H**;
        2.      April 11, 2007: Statements **made to Lynn H. by other
                people** regarding taking long lunches, doing homework, and
                surfing the net;
        3.      May 2, 2007: Statements **made to Lynn H. by two other
                team members** that David caused a major Remedy outage;
        4.      May 9, 2007: **Statement by Amy to Lynn H.** regarding a
                meeting; and
        5.      May 10, 2007: **Statement by unknown reservist to Lynn
                H**. regarding Mr. Standley.

b.      Deposition of Lynn H.
        1.      178: 13-23:   Statement that "At one time or another **I heard
                from** everybody on the team.

    c.      Defendant's Statement of Facts:
          1.      Paragraph 16 and Footnote 31:   **Statements made to Lynn H. from** the eight-person Web Database Development Team.

    d.      Defendant's Motion for Summary Judgment:
          1.      Footnote 34.   "at one time or another [between August 2006 and July 2007], **I heard** from everybody on the team [complaining or criticizing Mr. Standley's job performance; and
          2.      Page twenty bullet two statement complaints from customers.

    e.      Appendix Documents that contain hearsay or are hearsay:
          1.      EEO Investigative File as of Affidavits APPX 0036-132;
          2.      E-mails from W. Cindy J., APPX 105-106;
          3.      Letter dated June 30, 2008 from Edward C. APPX 212;
          4.      Letter dated May 13, 2008 from John K. APPX 210 -211.

    f.      Defendant's Motion for Summary Judgment:
          1.      Statements made by Janice W. regarding the work-study working on complex programming tasks.   Janice W. had no personal knowledge as to what programming tasks the work-study was working on.   First, she did not supervise her, review her work, what type of experience or training the work study possessed, or what instructions this person received from Lynn H.

10.     Mr. Standley objects to the usage by Defendant in its Motion for Summary Judgment and Statement of Facts statements from unnamed individuals, "customer" and "co-workers" which are not support by affidavit or deposition.   U.S. Const. Amend XI; Paragraph 9 and subparagraphs supra.   Mr. Standley requests that the Court reject such testimonial evidence from these unnamed sources.

    **2.**    **Rule of Optional Completeness:**

11.     Pursuant to the Federal Rule of Evidence§106, sometimes referred to as "optional completeness," Mr. Standley presents the following testimony listed in Defendant's Motion for

Summary Judgment and Statement of Facts below:

    a.    Jan W. Deposition:

> A:    Because we had a high school work study who had never programmed and she picked it up just like that.
>
> Q:    She was doing complex programming is that your testimony?
>
> A:    She was doing much more complete programming than David.
>
> Q:    Did you monitor her work?
>
> A:    **No**.
>
> Q.    Did you see what she was actually doing?
>
> A:    I know what language she was coding in.
>
> Q:    No, ma'am.  Did you actually see what she was actually doing, that high school student?
>
> A:    I know the application she wrote.  **I did not go examine her code**.
>
> Q:    Do you know if anybody helped her?
>
> A:    **I know that Lynn H. worked with her** … 54: 12-25; 55: 1-16.

    b.    David Standley Deposition:

> Q.    Well, why do you think that was your race rather than something personal or something else?
>
> A.    Well. The race is only thing I have to go on because I was the only black American on the team.  **Also I was not invited to – Lynn, John and Jan would have meeting, and they did not invite me to the meeting, to discuss, me.   In my training of being on the team, if you have a problem with the team, you should consider all parties and hear both side of the story**. 16: 24-25; 17:1-8.
>
> Q.    My next question pertains to Jan W.  Do you believe that she discriminated against you because you are black?
>
> A.    Yes.
>
> Q.    **What evidence or information supports that belief?**
>
> A.    **Well, Jan, when I would ask her for advice on something, she would say, I'm not – I'm Not on your team.  And then later on, I found out the same project I was working on, for instance, like the I&L system behind my back, she was developing another system and getting other people on the team involved when I'm working with a customer**

**based on the customer's requirements.   It's just like there was no team effort.   Refusal to work with me**.

Q.   Is it possible that she didn't want to work with you because she didn't think you were a very good computer specialist or programmer?

A.   I Don't know.   Anything is possible.

Q.   Okay.

A.   I mean, she never – never mentioned to me that was the reason why not, so I don't' know.

Q.   Well, why do not you think it necessarily had to be because you're black that she didn't allegedly want to work with you?

A.   **That was just the way I felt.   Because like I said, the rest of the team was white, and she worked with them and didn't work with me**.   26: 7-25; 27: 1-15.

Q.   What evidence or information do you have that would support your belief that he [John M.] treated you differently because you're black?

A.   Well, when I would go to him about the situation, the conflict between Jan and I, he would never take any action. **And at the same time, he knew that Jan and I had conflicts.   And when he tried to put me on the PIP, he put Jan and I – knowing that Jan and I didn't get along. I mean, we had conflicts and he didn't care.**   27: 19-25; 28: 1-6.

Q.   I want to ask you about Jeffrey R.   What information or evidence do you have that he discriminated against you because you are black?

A.   … **And being a manager, he never also – he never called a meeting to talk with me to find out if I was having any issues with the team or any family issue that was – that could be causing a performance problem or that the perception was of my performance.   The only time he called me into a meeting was when Lynn had mentioned the case between Jan W. and myself.**   49: 23-25; 50: 1-2.

## C.   PARTIES' BURDENS OF PROOF FOR RACIAL DISCRIMINATION, RETALIATION, AND HOSTILE WORK ENVIRONMENT.

12.   To maintain a cause of action for racial discrimination and retaliation, a Plaintiff

must demonstrate a prima facie case of discrimination and retaliation by satisfying a multi-factor

test from which intentional discriminatory and retaliatory motive may be inferred, thus creating a rebuttable presumption.   A plaintiff may prove employment discrimination through direct or circumstantial evidence.  *Laxton v. Gap, Inc.*, 333 F.3d 572, 573 (5th Cir. 2003); *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000).   Because direct evidence of discrimination is rare, the Supreme Court has devised an evidentiary procedure that allocates the burden of production and establishes an orderly presentation of proof in discrimination cases. *Bodenheimer v. PPG Industries, Inc.*, 5 F.3d 955, 956 (5th Cir. 1993).

13.     If a plaintiff has to rely on circumstantial evidence, a plaintiff must establish four elements of a prima facie case under the *McDonnell Douglas* framework (1) he is a member of a protected class; (2) he was qualified for his position; (3) he was discharged or suffered some other adverse employment action; and (4)  he was replaced with a person outside the protected class or he was treated less favorably than similarly situated employees of a different race.  *McDonnell Douglas Corp. v. Green*, 411U.S.792, 807, 93 S.Ct.1817 (1973).

14.     Defendant in its Motion for Summary Judgment asserts that Plaintiff must plead specific facts in his response and complaint to establish the required *McDonnel Douglas* prima facie case.  Goldman, Ross B., Putting Pretext in Context:  Employment Discrimination, the Same-Actor Inference, and the Proper Roles of Judges and Juries, 93 Virginia L. Rev. 1533 (2007). "The Court wrote that it seems incongruous to require a plaintiff, in order to survive a motion to dismiss, to plead more facts than he may ultimately need to prove to succeed on the merits regarding direct 'and circumstantial' evidence of discrimination.  Id.; *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 511, 512 (202); *Desert Place Palace, Inc. v. Costa*, 539 U.S. 90, 92 (2003).

   **1.     Burden of Proof Discrimination:**

15.     Once the plaintiff establishes a *prima facie* case, the burden shifts onto the defendant to assert a nondiscriminatory, legitimate reason for the termination. *Id.* at 802.   If the defendant meets this burden, then the inference dissolves and the plaintiff must show that the given reason is a pretext for unlawful discrimination. *Id.* at 804.

16.     At stage three, it is proper to allow indirect evidence which rebuts the employer's proffered reason in the absence of any final showing that discrimination was the real reason for the discharge.   *Valdez v. Church's Fried Chicken, Inc*., 683 F.Supp. 596, 633 (W.D. Tex. 1988). Limiting the employer to legitimate reasons makes it possible for the plaintiff to disprove the proffered reason in the third stage of the case.   *Id.*   For this reason, it is appropriate to resurrect the presumption of discrimination after plaintiff has shown pretext. *Id.*   Once the plaintiff demonstrates the proffered reason is not worthy, plaintiff does not have to make the further showing that the proffered reason was a pretext for discrimination. *Id.*   This may be done in one of two ways:

> (1)    directly persuading the court that a discriminatory reason more likely motivated the employer; or
>
> (2)    indirectly showing that the employer's proffered reason is unworthy of credence.   *Hall v. Gillman Inc*., 81 F.3d 35, 37(5th Cir. 1996); *Thornbrough v. Colombus and Greenville R. Co*., 760 F.2d 633, 639-40 (5th Cir. 1985); *Valdez*, 683 F.Supp. at 633.

17.     When a person with discriminatory animus has influence over the final decision-maker, that animus may be imputed to that decision-maker.   See e.g. *Haire v. Board of Supervisors of La. State Univ. Agric.& Mech. Coll*., 719 F.3d 356, 366-67 & n. 11 (5th Cir. 2013). Officials with final authority on employment decisions who do not conduct an independent investigation and rubber stamp the recommendation of another decision-maker, may act as a conduit of that decision-maker's discriminatory or retaliatory motive.   *Hitt v. Connell*, 301 F.3d

9

240, 248 (5th Cir. 2002); *Mato v. Baldauf,* 267 F.3d 444, 450 (5th Cir. 2001).   The Court should examine all the reasons for the actions offered Defendant to include independent investigation, [review of informal and formal procedures followed] by Defendant employees to reach his or her ultimate decision.   *Staub v. Proctor Hospital*, 131 S.Ct 1186 (2011).

18.     Plaintiff asserts that "if a supervisor performs an act motivated by an [unlawful] animus that is intended to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable." *Id*., at 1194.  Essentially, "if the discriminating employee's influence has "some direct relation" to the ultimate action taken, liability will be established." *Id*., at 1192.   If a plaintiff can demonstrate that others influence or have leverage over the official decision-maker, it is proper to impute their discriminatory or retaliatory attitudes to the formal decision-maker.   *Russell*, 235 F.3d at 226-27.

19.     Defendant's failure to follow its own policy is not probative of discriminatory animus in absence of proof that the plaintiff was treated differently than other non-minority employees because Title VII does not protect employees from the arbitrary employment practices of their employer, only their discriminatory impact." *Upshaw v. Dallas Heart Group,* 961 F.Supp. 997, 1002 (N.D.Tex.1997).   Plaintiff must show not only that Defendant did not adhere to its own procedures and policies, Plaintiff must also show Defendant treated its other employees, who were not members of his protected group, differently than him.   *Turner v. Baylor Richardson Med. Ctr.,* 476 F.3d 337, 346 (5th Cir. 2007).

20.     A Court can determine the intent of the supervisor by examining what evidence the supervisor considered or ignored when determining whether to take adverse employment action against an employee.   The Court upon examining the record will find that the final decision maker

did not examine any evidence submitted by Plaintiff, or did not give it proper weight.   *Id*.   David Standley will present the evidence that Defendant's formal policies were mere formalities and did not provide him with a fair opportunity to be heard.   Id.   Essentially Defendant's process was a predetermined tool designed to produce a desired adverse discriminatory and retaliatory employment practice - Plaintiff's termination.   *Id*.

**2.      Burden of Proof Retaliation:**

21.      A plaintiff establishes a *prima facie* case for unlawful retaliation by proving: (1) that he engaged in activity protected by Title VII; (2) that an adverse employment action occurred; and (3) that a causal link existed between the protected activity and an adverse employment action. *McMillan v. Rust College, Inc*., 710 F.2d 1112, 1116 (5th Cir. 1983).   The *McDonnell Douglas* burden-shifting framework is also applicable to unlawful retaliation cases.   *Id.,* at 1116.   An employee has engaged in a protected activity by Title VII if he has either: (1) opposed any practice made an unlawful employment practice by Title VII; or (2) made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under Title VII.   42 U.S.C. § 2000e-3(a).

22.      Once Plaintiff establishes a *prima facie* case, the burden of production shifts to Defendant to articulate a legitimate, non-retaliatory reason for the adverse employment action. *Id.*   If Defendant is able to introduce evidence which, if true, would permit the conclusion that the adverse employment action was nondiscriminatory, the focus shifts to the ultimate question of whether the Defendant unlawfully retaliated against Standley.   *Id.*   The plaintiff bears the ultimate burden of proving the employer's proffered reason is not true, but instead, a pretext for the real discriminatory or retaliatory purpose.   The conduct protected by Title VII must be a "but

for" cause of the adverse employment decision.   *McDaniel v. Temple Indep. Sch. Dist.*, 770 F.2d 1340, 1346 (5th Cir. 1985).

### 3.      Burden of Proof Hostile Work Environment:

23.      To sustain a claim that a hostile work environment existed because of Plaintiff's race or because he participated in the EEOC process pursuant to 42 U.S.C. Section 2000e-2(a)(1), Plaintiff must show that he was subject to (1) unwelcome harassment; (2)  the   harassment   was based upon his protected status; and (3) that the harassment complained of affected the terms, conditions, or privileges of his employment.   *Harris v. Forlift Systems, Inc.*, 510 U.S. 17, 21, 23 (1993); *Mota v. University of Texas,* 261 F3d 512, 523-24 (5th Cir. 2001).

24.      In order to determine whether the environment is hostile or abusive, the Court should examine all the specific circumstances of each case.   *Shephard v. Comptroller of Public Accounts of Texas*, 168 F.3d 871 (5th Cir. 1999).   In determining whether or not the harassment is sufficiently severe to alter a term or condition of employment, the court should consider:

> (1)      the frequency of the harassment;
> (2)      its severity;
> (3)      whether the conduct is physically threatening or humiliating or a mere offensive utterance; and
> (4)       whether the conduct unreasonably interferes with the employee's work performance.   *Mota* at 523-24.

25.      **In determining the objective standard, the harassment should be viewed from the point of view of a reasonable person in the Plaintiff's position**.   Whether harassing behavior was sufficient to create a hostile work environment, is a **fact-based issue**.   *Curry v. District of Columbia*, 195 F.3d 654, 665 (D.C. Cir. 1999).

26.      In *Burlington Northern & Santa Fe Railway Co.*, the Supreme Court addressed the issue of whether Title VII's anti-retaliation provision forbids only those employer actions and

resulting harms that are related to employment or the workplace, to characterize how harmful an act of retaliatory discrimination must be in order to fall within the Title VII's scope.  *Id.*, at 59. The Court, after careful analysis, concluded that the scope of the anti-retaliation provisions of Title VII extends beyond workplace-related or employment-related retaliatory acts and harm.  *Id.* 66.

27.     The Court requires the examining court to examine the context of the employer's actions and the surrounding circumstances, expectations, and relationships between the parties to fully capture the substance of the harm and what may not be described by simple words.  *Id* at 69. In the past, the Fifth Circuit held that Title VII prohibits national origin harassment and that a victim may recover damages for psychological harm.  *Rogers v. EEOC,* 454 F.2d 234, 238 (5th Cir. 1971) The court reasoned that, because discrimination is a "complex and pervasive phenomenon," Title VII must be accorded a liberal interpretation to effectuate its purpose of eliminating the humiliation, unfairness and adverse employment consequences of ethnic discrimination.  *Id.*   In so holding, the court determined that the relationship between the employee and the workplace is significant enough to invoke statutory protection.  *Id.*

28.     Once the Plaintiff has established his burden that a hostile work environment exists, the burden shifts to Defendant to establish that it:

(1)     exercised reasonable care to prevent and correct promptly any harassment; and
(2)     that the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer. *Faragher v. City of Boca Ranton*, 524 U.S. 775, 801-808, 807 (1998); *Burlington Industries v. Ellerth*, 524 U.S. 742, 751 (1998).

29.     The burden then shifts back to Plaintiff to show that: (1) the employer did not exercise reasonable care to prevent and correct promptly any harassment; and (2)  that         the employee took advantage any and all preventive or corrective opportunities provided by the

13

employer or that the employer failed to offer any preventive and corrective action. *Id*.

30.     If the employer, through an agent with authority to receive notice of harassment complaints, has notice of complaints, the employer has duty to take prompt action which is reasonably calculated to relieve or successfully abate the hostile work environment; if it does not take action, it cannot demonstrate the exercise of reasonable care.  *Skidmore v. Precision Printing & PK., Inc.*, 188 F.3d 606, 616 (5th Cir. 1999); *Sims v. Health Midwest Physician Services Corp*, 196 F.3d 915 (8th Cir. 1999).  **The mere existence of the policy is not enough**.  *Conto v. Concord Hospital*, 2000 WL 1513798 (D.N.H. 2000).

### D.     ALL CLAIMS ARISING BEFORE MAY 13, 2008 SHOULD NOT BE DISMISSED AS UNTIMELY:

31.     Mr. Standley asserts that his claims that he was issued (1) a negative employment evaluation on January 11, 2008, (2) a predetermined unaccomplishable Performance Improvement Plan in March of 2008, (3) a Notice of Intent to Remove on May of 2008, and (4) the existence of a hostile work environment in 2007 and 2008 should not be dismissed because, he did not discover the extent of the discriminatory and retaliatory conduct of John M. Janice W., Lynn H., and Jeffery R. until on or shortly after May 13, 2007.   On or shortly after May 13, 2007, Mr. Standley realized the extent of the discriminatory and retaliatory conduct of John M. Janice W., Lynn H., and Jeffery R.

32.     Mr. Standley asserts there is nexus between all the adverse job decisions and the hostile work environment, which started in March of 2007 and ended on July of 2008, and was based on his race and prior EEO activity.   Mr. Standley asserts that he discovered this nexus outside of the forty-five day limitations period because of the sophisticated usage of Defendant's internal policies and procedures by John M. Janice W., Lynn H., and Jeffery R., who used the same

14

to hide their discriminatory and retaliatory intent.

33.    The Continuing Violation Doctrine relieves a plaintiff of a limitations bar, if he can show a series of related, adverse job-related acts directed to him and related to the original adverse act or event if one or more of the same falls within the limitations period.   *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 279 (5th Cir. 2004).   In *Berry v. Board of Supervisors*, the Fifth Circuit created a non-exhaustive list of three factors to help distinguish between the occurrence of isolated acts of discrimination and a persistent, ongoing pattern.  *Berry v. Board of Supervisors*, 715 F.2d 971 (5th Cir. 1983); *Rush v. Scott Specialty Gases, Inc.,* 113 F.3d 476 (3d Cir. 1997); *West v. Philadelphia Elec. Co.,* 45 F.3d 744, 755 (3d Cir. 1995).   The Fifth Circuit indicated a Court should consider the:

(i)    subject matter ("whether the violations constitute the same type of discrimination")

(ii)   frequency; and

(iii)  degree of permanence ("whether the nature of the violations should trigger the employee's awareness of the need to assert 'his/her' rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate") of the underlying acts.  *Berry v. Board of Supervisors*, 715 F.2d 971 (5th Cir. 1983).

34.    The Notice of Intent to Remove Mr. Standley is the final link in an interrelated chain of events that started with Lynn H., John M., Janice W., and Jeffery R. issuing Mr. Standley a negative alleged mid-term evaluation in June of 2007, failing to promote him in 2007, issuing him a negative Performance Evaluation Report on January 11, 2008, assigning him an unaccomplishable Performance Improvement Plan (P.I.P.), supporting the termination of Standley, recommending the issuance of a Notice of Intent to Remove letter, failure to provide training in 2007 and 2008, and allowing a hostile work environment to exist after March of 2007.   Exhibit 12: ¶ 25-59; Exhibit 3.   Mr. Standley asserts that the subject matter of all of the aforementioned

adverse employment actions were related to his claims of discrimination, retaliation and the existence of a hostile work environment.   Id.

35.    The frequency of the adverse employment acts and the discriminatory and retaliatory intent of John M., Lynn H., John M. and Janice W. were concealed from David by their usage of the Agency's polices and their individual discretion.   John M. issued Mr. Standley the June 28, 2007 Memorandum allegedly in compliance with Agency Policies.   John M. and Jeffery R. indicated they followed Defendant's policies and procedures when they issued Mr. Standley a negative Performance Evaluation Report on January 11, 2008.   John M., Lynn H., Jeffery R., and Janice W. consulted with Defendant's Human Resources Department before issuing Mr. Standley a P.I.P.    Janice W. alleges she relied upon Defendant's policies when she decided to unsuccessfully terminate Mr. Standley's P.I.P.   Jeffery R. alleged that he followed Defendant's polices when he decided to recommend the termination of Mr. Standley as an employee of Defendant.   John M., Lynn H., Jeffery R., and Janice W. all contend that their employment decisions were based on Defendant's internal policies and procedures, and not based on any individual discriminatory or retaliatory intent.

36.    Prior to May 13, 2008, Mr. Standley had no clue that Lynn H., John M., Jeffery R., or Janice W. we're discriminating against him, until he was issued the Notice of Intent to Remove. Mr. Standley had received negative job performance evaluation in 2005 and placed on a P.I.P., which he successfully completed.   Exhibit: 1.   At the time there was nothing unusual about actions of the aforementioned Individuals, except upon careful review of their individual actions, it becomes clear they were discriminating against Mr. Standley via thousand cut.   After receiving and contemplating the May 13, 2008 Notice of Intent to Remove, Mr. Standley realized he was

being discriminated against because of his race and prior EEO activity, and he needed to assert his rights by filing a complaint of discrimination, retaliation, and hostile work environment. See Defendant's APPX 058.

37.     For these reasons cited supra, Mr. Standley's claims of acts of discrimination and retaliation which occurred before May 12, 2008 should not be dismissed.

## E.     PLAINTIFF CAN ESTABLISH PRIMA FACIE CASE OF RACIAL DISCRIMIATION VIA CIRCUMSTANIAL EVIDENCE:

38.     Mr. Standley adopts the facts and evidence listed in paragraphs twenty-five through fifty-two of his Motion for Summary Judgment (and supporting Exhibits), by reference to show that that Employees of Defendant discriminated against him, thus Defendants' Motion for Summary Judgement should be denied.   Exhibit 11.

### A.     Plaintiff's Response to Defendant's Asserts that Plaintiff failed to Identify-Similarly-Situated Employee Who Received Preferential Treatment.

39.     Mr. Standley asserts that Janice W. was a similarly-situated non-Black employee (Anglo Female) who received preferential treatment from Lynn H. and John M. in 2007, and promoted over him in 2008.   Mr. Standley was "hired to lead the effort to migrate form Remedy 5.3 to Remedy 7.0 help desk application." Exhibit 3: Page 2.   Initially, there were not similarly situated employees similar to him with the same job duties and responsibilities.   Mr. Standley indicated in his Affidavit paragraph 25, that:

> "my white co-workers were treated differently than me as to job assignments, job appraisals, job opportunities, and job supervision.   I was not given the same opportunities to perform my duties of an IT specialist/software as my white co-workers.   Instead … my job actions were subject to pre-judged prejudices … I was not given opportunities to perform to my job assign without being pre-judged.   Id., at page 22 of 28.

40.     Since Mr. Standley had no comparative employees until after June or August of

17

2007, it is impossible for him to prove non-black employees received preferential treatment. The Administrative Judge and Defendant imply that any white person designated by Mr. Standley as a comparator employee must be identical. This "nearly identical" standard does not mean "identical" because such a standard could not be satisfied. *Lee v. Kan. City S. Ry.*, 574 F.3d 253, 261 n.25 (5th Cir. 2009). Mr. Standley is only required to show that **the differences actually account for the differential treatment**. *Id.* The similarly situated inquiry is best left to the jury who may consider different types of evidence to determine whether the differences actually account for differential treatment, such as (1) whether decision makers followed Defendant's policies and procedures when making adverse job decision as to Mr. Standley and non-white employees, (2) whether decision makers conducted independent investigations of decisions made by the parties' supervisors, and (3) provided adequate training to Plaintiff verses Janice W., etc. Exhibit 11: ¶ 25-60. *Reeves v. Sanderson Plumbing*, 530 U.S. 133, 147 (2000).

41.     In June or August of 2007, Janice W. assumed Mr. Standley's job duties. See Defendant's Statement of Facts ¶ 17. Janice W. was later selected as Mr. Standley's Team Leader. When Janice W. assumed Mr. Standley's job duties, she assumed the same duties and responsibilities as him. Id. Therefore, Janice W., after June of 2007, was similarly situated as Mr. Standley as a comparator employee. The Administrative Judge did not consider Janice W. as a similarly situated employee as Mr. Standley. The Administrative Judge as indicated by Defendant "rejected [Mr. Standley's] attempt to compare himself to T. C, Jerry R., or John M. …" See Defendant's Motion for Summary Judgment.

42.     Mr. Standley asserts that Janice W. and other white employees were treated differently than him. First, he was denied training and Janice W. was granted training. Id.:

Exhibit 12: 202/23-25, 203/1-6.   Second, Lynn H.'s complaints regarding Mr. Standley in 2007 were investigated, but, Mr. Standley's complaints regarding Janice W. were ignored.   Id.   Id. For the reasons listed supra, Plaintiff has identified one similarly situated employee and the differences between John M., Lynn H., and Jeffery R.'s treatment of Mr. Standley versus their treatment of Janice W. "actually account for the differential treatment" of him because of his race.

**B.     Plaintiff's Response to Plaintiff's Allegations of Racial Animus are Based on Nothing More than his Belief and Speculation:**

43.     Mr. Standley adopts paragraph twenty-five through fifty-two of his Motion for Summary judgment.   Exhibit 11: ¶ 25-52.   Defendant asserts that Mr. Standley's allegations of discrimination are based solely on his subjective belief and fail to provide any other evidence. This assertion is far from the truth.   Pursuant to the Federal Rule of Evidence §106, sometimes referred to as optional completeness, Mr. Standley presents the complete excerpts of his testimony in paragraph ten b supra in response to Defendant's selective use of his testimony.   Defendant's Motion for Summary Judgment implies Mr. Standley must present specific evidence of concrete discrimination.   Mr. Standley on the other hand alleges in his Motion for Summary Judgment, discrimination can be proved via circumstantial evidence.   Exhibit 11: ¶14, 15.

44.     Mr. Standley in his Motion for Summary Judgment presents specific facts to support his claim that the adverse employment actions which occurred to him in 2007 and 2008 were motivated by the discriminatory intent of Janice W., Lynn H., John M. and Jeffery R. Exhibit 11: ¶25-52.   One of the major complaints made by Lynn H., were typos in the work Mr. Standley submitted.   Garth N. indicated that in 2007 he reviewed Mr. Standley's demos before presentations to management and there were **no visible typos or spelling errors as alleged by Lynn H**.   Exhibit 8; Exhibit 12: 207/ 25; 208/1-9.   Ronda M. indicated that it was not uncommon

19

for co-workers to peer review each other work before submitting them to management.   Exhibit 10: 23/1-3, 19-25; 24/2-7, 24-25; 25/1-2.   Mr. Standley has presented all the factual evidence presented in his Motion for Summary Judgment sufficient sustain his claims that the discrimination he experienced is supported by more than his subjective belief.   As such Plaintiff's claim of discrimination should be decided by a jury.

> **C.    Plaintiff's Response to Defendant's Same Actor Inference Makes Race Discrimination Highly Unlikely in this case.**

45.    Defendant asserts pursuant to the "same actor inference" (or hire-firer inference) that it is irrational for a supervisor to hire an employee then terminate the same employee because of his race or prior EEO activity.   This case should be distinguished from the "same actor inference" cased cited by Defendant, because John M. and Jeffery R..'s decisions that Mr. Standley was acceptable for the original position they retained him for changed when he sought promotion in June of 2007.   The decision to hire Mr. Standley to migrate Remedy 5.3 to Remedy 7.0 is a separate decision from their decision that, he was not acceptable for promotion.

46.    The same actor inference should not apply in this case because Mr. Standley was place holder case for Janice W.   It is not unreasonable to believe that a decision-maker may hire a member of a disfavored race for specific job position, but refuse to promote him above a certain level (i.e. the "glass ceiling" some women and minorities face).   John M. Lynn, H. nor Jeffery R. never intended to promote Mr. Standley beyond his initial position, instead they wanted to promote Janice W.   Mr. Standley was a "place holder," while Lynn H., Jeffery R., and John M. we're grooming Janice W., the favored co-worker, for the position. This explains why Lynn H., John M., and Jeffery R. ignored all of Mr. Standley's complaints regarding Janice W., never documents the same, and accepted Janice W.'s versions of events regarding Mr. Standley.

47.    The hirer-firer/same actor inference is a fact issue for the jury to consider.   Whether the hirer

and firer are the same individual is merely one fact that should be considered by the jury, along with all the other facts in the case.  *Waldron v. SL Indus., Inc.*, 849 F. Supp. 996, 1005, 1006 (D.N.J. 1994).  *See also Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1167 n.4 (6th Cir. 1996).   The "same actor inference" is just that—an inference that should not be accorded any presumptive value and should play no role on summary judgment.  *Waldron*, 849 F. Supp. at 1005, 1006.    It is the province of the jury, not the court, to determine whether the inference generated by "same actor" evidence is strong enough to outweigh a plaintiff's evidence of pretext such as Defendant's failure to follow polices, properly train Plaintiff, evidence of bias, etc.

**F.      PLAINTIFF CAN ESTABLISH PRIMA FACIE CASE OF RETALIATION:**

48.      Mr. Standley adopts the facts and evidence listed in paragraphs twenty-five through sixty of his Motion for Summary Judgment (and supporting Exhibits), by reference to show that that Employees of Defendant retaliated against him because of his prior EEO activity, thus Defendants' Motion for Summary Judgement should be denied.   Exhibit 11.

> **1.      Plaintiff's Response to Defendant's Assertion that Plaintiff Cannot Establish that the Responsible Managers had Knowledge of His Prior EEO Activity:**

49.      Mr. Standley in his Motion for Summary Judgment presented more than sufficient evidence that John M. and Lynn H. had knowledge of his prior EEO activity, and that Janice W. and Jeffery provided perjured testimony regarding their knowledge of Mr. Standley's prior EEO activity.   This is an important fact issue.   First, Jeffery R. and Janice W. denied having any knowledge of Mr. Standley's prior EEO activity.    Second, John M. indicated that Mr. Standley's prior EEO activity did not influence his decisions regarding Mr. Standley.   But the facts indicate that Janice W. and Jeffery R. were aware of Mr. Standley's prior EEO activity.   A fact issue remains as to whether their knowledge of Mr. Standley's prior EEO activity influenced the decisions they made regarding him.   There is sufficient circumstantial evidence which supports

the conclusion that their knowledge of Mr. Standley's prior EEO activity did influence their decision, due to their efforts to hide such knowledge.

50.     Lynn H. acknowledged she was aware of Mr. Standley's prior EEO activity after having discussed it with Mary S. and Clarie C., who denied such conversations.   See ¶ 59-60 of Plaintiff's Motion for Summary Judgment.   Lynn H. denied knowing the specifics of Mr. Standley's EEO activity, but acknowledges her knowledge of them.   Id.   John M. admits that he heard stories about Mr. Standley from other people, including his former supervisors, but could not recall their names or what was discussed.   Exhibit 4: 20/16-18; 268/20-23.

51.     John M. admitted he spoke to Wayne S. regarding Mr. Standley in 2007 and 2008 but could not recall what was actually discussed as to Mr. Standley.   Id.: 4: 263/2-12, 18-25; 264/1-20; 265/12-25; 266/14-23; 271/4-6, 17-25; 273/22-25; 274/2-17; 281/1-23; Exhibit 11: ¶ 25-58.   John M. indicates he may have had more than one conversation with Wayne S. in 2007 and 2008 regarding Mr. Standley, but could not recall what they spoke about regarding Mr. Standley.   Exhibit 4.: 273/22-25, 274/2-17.   More specifically John M. indicated that he cannot "remember" what he discussed with Wayne S. regarding Mr. Standley in 2007 or 2008, but the discussions occurred. Exhibit 4: 20/16-18; 21/5-11; 261/16-25.   Jeffery R. indicated that he did not speak to Wayne S. in 2007 or 2008 regarding Mr. Standley.

52.     After indicating on three or four occasions not being able to recall what Wayne S. said regarding Mr. Standley, John M. indicates that their conversations were related to Mr. Standley's job performance.   Id. 263/8-12.   When asked "How do you remember that when you don't remember what you talked to him about?" John M.'s response was:

> "I remember **he was one of the guys** that **we talked** about things.   Who else **did we talk to**? Where else did **we** get information from?   Id. 263/15-

14.

John M's response infers that he, Wayne S., was "one of the guys **we talked** about things with." John M's response also infers that he, along with one or more employees of Defendant, were discussing Mr. Standley with Wayne S. and other individuals.

53.     It is important to note that the Defendant failed to produce any documents regarding any conversations between John M. and Wayne S., or any of the persons described as "we" by John M.   John M. failed to document any of his conversation with Wayne S and when asked:

> Q:     Did you document your conversations with Wayne S. via e-mail or memorandum or handwritten notes?
>
> A:     **Definitely not memorandum**.   I did very few of those.   E-mails, I don't think so, because we probably talked to Jeff about it because it was kind of a group decision.   When we discerned things, we just – all us found out, you know, somebody talked to somebody, one person, somebody else talked to somebody else.   Id. 18-25.

54.     The question becomes, why did John M. fail to document his conversations with Wayne S. or the individuals he described as "we" regarding Mr. Standley.   This question is answered in an article by Sher Zieve, who documents tactics used by Defendant's employees to punish individuals who file complaints of discrimination or report wrong-doing by superiors. Exhibit 5: Zieve Sher, Exclusive: Former NSA Employee Speaks Out on it Corruption, <u>Canada Free Press</u>, February 20, 2014.

55.     When Mr. Standley alleges that John M. and Jeffery R. conspired to punish him for filing his informal complaint of discrimination against Wayne S. in 2004, he is faced with an impossible evidentiary burden.   Defendant asks for proof for such allegations.   Plaintiff presents circumstantial evidence indicative of a conspiracy by John M., Wayne S. and Jeffery R. but cannot present any direct evidence because John M., Jeffery R., Janice W., and Lynn H. did not document

23

their actions.   Further, the same individuals either denied such knowledge or indicated they were not influenced by the same.   In any event the circumstantial evidence indicates that John M. Jeffery R., Janice W. and Lynn H. possessed more than mere knowledge of Mr. Standley's prior EEO activity.   As Lynn H. said "Get ready for a major compliant on this one guy! Glad it is not me, …   Exhibit 6.

**2.      Plaintiff's Response to Defendant's Assertions Regarding the Time Gap Between Plaintiff's Prior EEO Activity and the Challenged Employment Actions is too Attenuated to support any Inference of Reprisal:**

56.      Defendant's basic argument is that too much time has passed between Mr. Standley's 2004 informal complaint of discrimination and the August 2007 termination, for the same to be a factor in the employment decisions of John M. Jeffery R., Lynn H., and Janice W. regarding Mr. Standley.   The temporal cases cited by Defendant should be distinguished in that a jury could find that the same aforementioned individual's adverse employment decisions were influenced by Mr. Standley's prior EEO activity.   The same cases are not absolute and should be applied on a case by case basis after reviewing the relevant individual facts of each case before it. The question should be, does Mr. Standley present sufficient circumstantial evidence to support a finding by a jury that John M. Jeffery R., Lynn H., and Janice W.'s decisions were influenced by Mr. Standley's prior EEO activity, and David Standley had no way of discovering such animus?

57.      In this case, there is circumstantial evidence to support a jury's finding John M. Jeffery R., Lynn H., and Janice W. had more than mere knowledge of Mr. Standley's prior EEO activity from 2004 and 2007.   Second, a jury could find that the same individuals' adverse employment decisions were impacted by their knowledge of Mr. Standley's prior EEO activity. This can be inferred by their attempts to hide their knowledge of Mr. Standley's prior EEO activity

by not documenting their communications within their group or third parties referenced by John M., regarding Mr. Standley's prior EEO activity.   Third, a jury could find that Defendant's culture supports the punishment of individuals who participate in EEO activities then and secreting of such activities.

### 3.   Plaintiff's Response to Defendant's Assertion that Plaintiff's Retaliation Claim is Based on Nothing More Than Speculative, Farfetched Theories:

58.   Mr. Standley adopts all facts listed in **paragraphs twenty-five through sixty** of his Motion for Summary Judgement in response to Defendant's allegations that his complaints of retaliations are mere speculation.   Exhibit 11: ¶ 25-60.   This circumstantial evidence is sufficient for jury to find that Mr. Standley's claims of retaliation are more than mere speculation.

## G.   DEFENDANT   PROFFERED   LEGITIMATE   NON-DISCRIMINATORY REASONS FOR ADVERSE EMPLOYMENT ACTIONS AGASINT DAVID STANDELY WERE PRETEXTUAL:

59.   Mr. Standley adopts the facts and evidence listed in paragraphs twenty-five through fifty-two of his Motion for Summary Judgment (and supporting Exhibits), by reference to show that that explanations offered by Defendant were not legitimate employment decisions free of discrimination and retaliation, thus Defendants' Motion for Summary Judgement should be denied. Exhibit 11.

### 1.   Plaintiff's Response to Defendant's Assertion that it had Ample Reasons to Evaluate Plaintiff's 2007 Performance as "Did Not Meet Objectives."

59.   Mr. Standley adopts all facts listed in **paragraphs forty through forty-six** of his Motion for Summary Judgement in response to Defendant's allegations that it presented legitimate non-discriminatory reasons for its employees' adverse employment actions against Mr. Standley.

60.   This Court should reject the explanation offered by Defendant as pretextual because

it failed to train Mr. Standley because of his race and prior EEO activity then terminated his employment for not being able to perform the tasks assigned to him.   Exhibit 11: ¶ 40-46.

61.     Mr. Standley requested training at least seven times from John M. in 2007 and 2008, twice from Lynn H. in 2007, and once from Janice W. in 2008.   Id.   Each time he was denied. Id.   John M., Lynn H. and Janice W. observed that Mr. Standley lacked the training necessary for his changed job duties in 2007 but failed to provide training.   Id.   John M.'s explanation for denying Mr. Standley training was lack of monies.    At the same time, John M. authorized training for Janice W. in 2007.   For example, Mr. Standley submitted a formal training request for advanced Remedy Part 3 training and Oracle 10g database training and was declined.   Exhibit 7. Mr. Standley attempted to learn advance programming features such Remedy AR email, Remedy mid-tier Web development, in/out joint of Remedy and 10g functions on his own only, or, as John M., Lynn H., and Janice W. described, through "on the job training."   Id.   It should be noted that Defendant explanation for not providing Mr. Standley the training he requested was, no monies. Exhibit 4: 102/11-15.   At the same time Defendants found monies for Janice W. to attend training course directly related to the tasks assigned to Mr. Standley.

62.     Defendant takes Mr. Standley as it found him on August 2006.   That is an employee who had not programmed in over ten years and who requested but was denied training. Exhibit 1: Exhibit 13.   Finally, Defendant should not be allowed to then terminate him because he cannot perform due to lack of training not provided to him because, of his race and prior EEO activity.

63.     Defendant's employees did not follow its own policies and procedures.   As mentioned in Mr. Standley's Motion for Summary Judgment, Mr. Standley's original job

description changed in March of 2007.   Id.   Mr. Standley's job duties were changed by John M.

in November of 2007.   Id.   John M. and Jeffery R. failed to follow appropriate policies related to

Mr. Standley's job modifications in 2007.   Id.   Finally, at each stage of investigation, there was

no independent investigation by decision makers who relied upon the decisions of John M., Lynn

H., Jeffery R. and Janice W., whose original decisions were discriminatory and retaliatory.

    **2.**    **Plaintiff's Response to Defendant's Assertion that it Issued a Reasonable, not a "Predetermined/Unaccomplishable" PIP:**

64.    Mr. Standley adopts all facts listed in **paragraphs forty-seven through fifty-two**

of his Motion for Summary Judgement in response to Defendant's allegations that Defendant's

PIP was not predetermined and unaccomplishable.   Mr. Standley asserts that he could never have

completed the PIP because he lacked necessary training and Janice W.'s support by John M. and

Jeffery showed that they never intended for him to complete the PIP.   If they intended Mr.

Standley to successfully complete the PIP, they would have provided him the training he requested.

Further, Janice W. indicated that she provided Mr. Standley weekly reviews, Mr. Standley

described these events as nonconstructive events.   Exhibit 1.   Janice W. indicated that Mr.

Standley was supposed to work only on this PIP projects, but this was an untrue statement.

Exhibit 14: 146/6-9.   Mr. Standley was required to complete his PIP task as well as his routine

task.   Id. 148.   In any event, there are sufficient facts for a jury to determine that Mr. Standley's

PIP was unreasonable and unaccomplishable.

    **3.**    **Plaintiff's Response to Defendants Legitimately Issued a Notice of Proposed Removal and a Final Removal Because Plaintiff Failed the PIP:**

65.    Mr. Standley adopts all facts listed in **paragraphs thirty-three through thirty-**

**nine** of his Motion for Summary Judgement in response to Defendant's allegations that Defendant

had legitimate reasons for issuing him a notice of proposed removal and final notice of removal

because he failed his PIP.   Although Jeffery R., Lynn H., John M. and Janice W. we're not the

final decision makers, their opinions were relied upon the Lt. Col. Todd, and Edward C. Neither

Lt. Col. Todd, and Edward C. conducted any independent investigation.   For these reasons, their

decisions were tainted by the discriminatory and retaliatory motives of Jeffrey R., Lynn H., John

M. and Janice W.

## I.    PLAINTIFF HAS ESTABLIHED THE EXISTANCE OF A HOSTILE WORK ENVIRONMENT:

66.    Defendant's request for a summary judgement on Plaintiff's claims of summary

judgment should be denied because the actions of Janice W., Lynn H., Janice W., and Jeffery R.

were discrete employment event(s) not related to one another.   Mr. Standley asserts the actions of

all the aforementioned individuals were interrelated and part of one event.   There is a causal

connection between Defendant's employee actions and Mr. Standley's complaint of discrimination

and retaliation, and each cannot be considered separately

67    Mr. Standley begin to experience a hostile work environment occurred after he

submitted his promotion package to Lynn H. for a GGS 13.   The hostile work environment Mr.

Standley experienced was also associated with Lynn H. and John M.'s unwillingness to protect

Mr. Standley from constant harassment of Lynn H.   When Mr. Standley report incidents John M.

or Lynn H. would infer that he was the problem and criticize his job performance.

68.    Mr. Standley reported to Lynn H. and John M. in 2007 and 2008 numerous

harassing acts of Lynn H. but, neither took any actions to protect him.   See ¶ 10, 11, 49 of

Plaintiff's Motion for Summary Judgment.   For instance, between May 2007 and December 2007

Mr. Standley reported to both Lynn H and John M. that Janice W.:

a.    was standing over him as he worked without reason;
b.    taking credit for his work behind his back;
c.    fabricating incidents to infer he was the instigator;
d.    describing him as angry;
e.    attempting to supervised him when she lacked authority;
f.    bullying him;
f.    engaging in other unprofessional and unethical conduct towards him. See ¶ 49 of Plaintiff's Motion for Summary Judgment.

69.    Mr. Standley asserts that Lynn H. and John M. as employees Defendant had an obligation to act to protect him by initiating some type of prompt corrective or remedial action to resolve the situation between himself and Janice W.   *Ward v. Bechtel Corp.*, 102 Fed 199, 203 (5th Cir. 1997); *Johnson v. ITT Aerospace/Communications Div. Of ITT Industries, Inc.*, 272 F3d 498 (7th Cir. 2001).   Mr. Standley asserts that Defendant's employees' inaction impacted and unreasonably interfered with his ability to perform his job duties associated with goals and objectives assigned to him.   The harassing actions of Janice W. which occurred in 2007 and 2008 were supported by inaction of Lynn H. and John M. we're not incidental, isolated, or occasional but, part of a pattern of intentional behavior related to Mr. Standley's race and prior EEO activity.

70.    Even though John M. was aware of Mr. Standley complaints regarding Janice W. harassing him in 2007, he assigned her as his review in 2008.   John M. had to know Janice W. would not allow Mr. Standley to successfully complete his PIP because of their prior relationship. During the PIP Mr. Standley complained to John M. that Janice W. failed to provided him clear PIP objectives, appropriate coaching, mentoring, refused to answer his questions, etc., that she continued to create hostile work environment for me.   Exhibit 1; Exhibit 12: 206/ 2-10; 209/ 1-18; 210/9-12.   For example, during the weekly PIP reviews Mr. Standley attempted to point out to John M. how Janice change requirements and functionality to the program and would provide

me no notices or guidance and the criteria was changes.   When he would ask her questions about the PIP project assigned to him, Janice W. would say you are a Software Engineer, you figure it out.

71.   Mr. Standley asserts that the severity of the harassment was enhanced because management support the harassment which occurred.   The harassment Mr. Standley experienced was not direct harassment as envisioned in Defendant's Motion for Summary Judgment, but the subtitle and through over time to send a message to him and his co-workers that he was targeted for special treatment.   Complaints about Mr. Standley were amplified from asserts that the aforementioned action(s) by Defendant's employees went beyond mere offensive utterances, but were humiliating and embarrassing to her or any reasonable person, who considers themselves a professional.

## III.   CONCLUSION.

For the reasons set forth above, Plaintiff, David Standley, submits that Defendant, National Security Agency, is not entitled to a summary judgment as a matter of law and the same should be **DENIED**, because Plaintiff has set forth genuine issues of material facts as to all required elements of his clauses of action.

Respectfully submitted,

By: /s/ *Markes E. Kirkwood*

Markes E. Kirkwood
Attorney at Law
LAW OFFICES OF MARKES E. KIRKWOOD
P.L.L.C.
2600 McCullough Avenue
San Antonio, Texas 78212
Telephone: (210) 532-1000

30

Fax Number: (210) 572-7575 / (210) 736-2212
State Bar No. 24032509
E-mail address:   Kirkwoodmarkes@yahoo.com
Attorney for Plaintiff:   David Wayne Standley

## **Certificate of Service**

I hereby certify that on January 29, 2016, I electronically filed the foregoing Plaintiff's Motion

for Summary Judgment with the Clerk of the Court using the CM/ECF system, which will send

notification to Robert Shaw-Meadow, Assistant Attorney General for Defendant.

/s/ *Markes E. Kirkwood*

Attorney at Law