

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

DAVID W. STANDLEY,                         §
                                           §
        *Plaintiff*,                       §
                                           §
                                           §
v.                                         §        Civil Action No.  SA-14-CV-977-XR
                                           §
                                           §
MICHAEL S. ROGERS, *United States*         §
*Director of National Security Agency*,    §
                                           §
        *Defendant*,                       §
                                           §

ORDER

On this date, the Court considered Plaintiff David W. Standley's Motion for Summary

Judgment (docket no. 42), Defendant Michael S. Rogers's Motion for Summary Judgment

(docket no. 41), and the corresponding responses and replies.  After careful consideration, the

Court will grant Defendant's Motion for Summary Judgment and deny Plaintiff's Motion for

Summary Judgment.

BACKGROUND

Plaintiff David Standley began working for the National Security Agency ("NSA") in

1984.  Docket no. 1 at 3.  He worked for the agency as an IT professional in a variety of roles in

a variety of locations.  *Id.*  In 2001, while Standley was working in Korea, he made an informal

complaint of race discrimination against one of his supervisors named Wayne S.[1]  Docket no. 28

at 5.  He decided not to pursue it and never took any official action.  *Id.*  In 2004, when Standley

was stationed in England, he filed a formal complaint of discrimination against two of his

supervisors when he was not promoted.  *Id.*  He filed another complaint in 2005 alleging that a

---

[1] Because of security concerns, throughout this lawsuit the parties have withheld the last names of the individuals involved.  The Court adopts the same practice here.

foreign contractor harassed him, that a performance evaluation he received was biased, and that he had been subject to a hostile work environment.  *Id.* at 6.  In 2007, Standley was recalled back to NSA headquarters to testify about these incidents, but the hearing was cancelled.  Docket 42 at 26.  Ultimately these complaints were consolidated and an administrative judge ruled against Standley.  Docket no. 28 at 6.

At some point in time, Standley transferred back to the NSA headquarters in Maryland. *Id.* at 7.  In the summer of 2006, he applied for the position of Database Team Lead/REMEDY Team Lead/Database Administrator, a vacancy in the NSA's Texas office.  Docket no. 39-4 at 89.  The primary function of the position was to serve as the "lead employee for the migration and development of the REMEDY 7.0 Help Desk Tool implementation."  Docket no. 15 at 2. Standley's resume when he applied indicated that he had a "strong background" with REMEDY and he represented in the interview to John M., the hiring official and his future supervisor, that he had advanced training in REMEDY and was very experienced in it.  Docket no. 39-4 at 89. Eventually, Standley met John M. and Jeffrey R.—another supervisor in the Texas office—at a conference where the three men spoke about his interest in moving to San Antonio.  *Id.* at 14. Standley was ultimately selected for the position.  *See id.*

Standley's transfer to the San Antonio office was effective August 1, 2006.  Docket no. 15 at 2.  His tasks included upgrading REMEDY applications, gathering customer requirements, designing applications, and migration of data.  Docket no. 39-1 at 17.  Standley's team included Lynn H., John M., Jeffrey R., and Janice W.  Docket no. 39-4 at 51–52.  Lynn H. was his immediate supervisor until June 2007, when John M. became his immediate supervisor.  *Id.* Jeffrey R. was a higher-level manager.  *Id.*  Janice W. was at first Standley's co-worker but became his immediate supervisor in January 2008.  *Id.*

2

Standley began to have performance issues shortly after he transferred to San Antonio. By his own admission, "he lacked the experience and training to properly complete the programming tasks" he was assigned.  Docket no. 28 at 9.  A few months into his employment in San Antonio, Lynn H. began to document his performance problems.  Docket no. 39-3 at 68. Among other things, Standley was unable to perform basic updates and other tasks, was accused of passing off work by multiple coworkers, caused a major system outage, missed several important meetings, and did not make adequate progress on the REMEDY help desk project (his main responsibility).  Docket no. 39-2 at 3–5.

As a result of these issues, a Memorandum of Counseling was issued to Standley.  *Id.* at 45.  It warned Standley about his poor performance.  *Id.*  Ultimately, Standley's supervisors did not believe his performance improved and he was issued a negative performance evaluation for the 2007 year on January 11, 2008.  Docket no. 15 at 3.  He was given a 1.50/5.00 and an overall rating of "Did Not Meet Objectives."  *Id.*  Because of his negative review, he was placed on a Performance Improvement Plan, or PIP.  Docket no. 39-3 at 5.  The PIP took effect on February 26, 2008, and lasted until April 25, 2008.  *Id.* at 58.  Standley did not successfully complete the tasks on the PIP.  *Id.*

Standley received a notice of proposed removal on May 13, 2008.  *Id.* at 59.  It stated that his removal was based on "unacceptable performance" and that his removal would take place at a later date.  *Id.*  On June 30, 2008, Standley was given a final notice of termination.  *Id.* at 61. In lieu of being fired, Standley resigned on July 21, 2008.  *Id.* at 63.  Eight days later, he submitted another letter that stated he did not wish to resign and only submitted the previous letter under duress.  *Id.* at 64.  The NSA did not reinstate Standley and his separation from the agency remained permanent.

As a result of these events, Standley contacted an EEO Counselor on June 27, 2008, a few days before he received his final notice of termination.  Docket no. 39-1 at 58.  He filed a formal complaint of discrimination on April 13, 2009.  *Id.* at 60.  After several years of proceedings and multiple appeals, the EEOC Office of Federal Operations issued a decision against Standley on August 1, 2014.  *Id.* at 29.  Standley then filed suit in this Court on November 4, 2014.  Docket no. 1.  His Amended Complaint lists race discrimination, retaliation, and hostile work environment as causes of action.  Docket no. 28 at 20, 22, 23.

## DISCUSSION

### I.      Summary Judgment Standard

Summary judgment is proper when the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–52 (1986).  A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party.  *Anderson*, 477 U.S. at 248.  Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails . . . to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Curtis v. Anthony*, 710 F.3d 587, 594 (5th Cir. 2013) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

The court must draw reasonable inferences and construe evidence in favor of the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Although the evidence is viewed in the light most favorable to the nonmoving party, a nonmovant may not rely on "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence" to create a genuine issue of material fact sufficient to survive summary

judgment.  *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 860 (5th Cir. 2004).

Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a

motion for summary judgment.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150

(2000); *Anderson*, 477 U.S. at 254–55.

## II.     Race Discrimination

Standley brings a claim for race discrimination.  Docket no. 28 at 20.  Section 703(a)(1)

of Title VII of the Civil Rights Act of 1964 provides that "[i]t shall be an unlawful employment

practice for an employer . . . to discharge any individual, or otherwise to discriminate against any

individual with respect to his compensation, terms, conditions, or privileges of employment,

because of such individual's race."  42 U.S.C. § 2000e–2(a) (2012).  Plaintiffs may establish

claims of race discrimination through either direct or circumstantial evidence.  *McCoy v. City of

Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).   When a plaintiff relies on circumstantial

evidence, the claim is analyzed under a three-step framework set forth by the Supreme Court in

*McDonnell Douglas Corp. v. Green*.  *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S.

792, 802 (1973)).  Standley has presented no direct evidence of discrimination; thus, he must rely

on the *McDonnell* analysis.  *See id.*; *see also* docket no. 42 at 7 (wherein Standley explains that

his claim should be analyzed under the *McDonnell* framework).

First, the plaintiff must set forth a prima facie case of discrimination.  *McDonnell

Douglas*, 411 U.S. at 802.  Under the framework, "[e]stablishment of the prima facie case in

effect creates a presumption that the employer unlawfully discriminated against the employee."

*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).  An employee establishes a

prima facie case if he can show that he "(1) is a member of a protected class; (2) was qualified

for the position; (3) was subject to an adverse employment action; and (4) was replaced by

someone outside of the protected class, or, in the case of disparate treatment, shows that other similarly situated employees were treated more favorably." *Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004). The nature of the evidence required to establish a prima facie case will differ depending on the specific facts and allegations in the case. *McDonnell Douglas*, 411 U.S. at 802 n. 13. As to the "similarly situated employee" element, the employee claiming discrimination must show that he was treated less favorably than others "under nearly identical circumstances." *Willis v. Cleco Corp.*, 749 F.3d 314, 320 (5th Cir. 2014) (citing *Lee v. Kan. City S. Ry.*, 574 F.3d 253, 259–60 (5th Cir. 2009)). "Nearly identical circumstances" exist when "the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Lee*, 574 F.3d at 260.

Second, if the plaintiff succeeds in establishing a prima facie case of discrimination, the burden shifts to the employer to "articulate a legitimate non-discriminatory reason for the adverse employment action." *Id.* (citing *E.E.O.C. v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 615 (5th Cir. 2009)). "The employer's burden is only one of production, not persuasion, and involves no credibility assessment." *McCoy*, 492 F.3d at 557.

Finally, if the employer is successful in meeting this burden, the "inference of discrimination disappears and the plaintiff must present evidence that the employer's proffered reason was mere pretext for racial discrimination." *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 317 (5th Cir. 2004). Mere speculation, conclusory beliefs, or unsubstantiated assertions are not sufficient to establish that an employee was discriminated against on the basis of race. *Grimes v. Texas Dept. of Mental Health & Mental Retardation*, 102 F.3d 137, 139–40 (5th Cir. 1996) ("Needless to say, unsubstantiated assertions are not competent summary

judgment evidence.").  "An employee's self-serving generalized testimony stating her subjective belief that discrimination occurred 'is simply insufficient to support a jury verdict in [a] plaintiff's favor.'"  *Id.* at 140 (citing *Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 268 (5th Cir. 1994).

A. Prima Facie Case

Standley has failed to show a prima facie case of race discrimination.  To begin though, he has presented evidence to establish the first three elements.  First, there is no dispute as to whether Standley was a member of a protected class.  *See* docket no. 41 at 2 (stating that Standley is African American).  Second, while some facts in the record indicate that he may not have been qualified for his position at the time he was terminated, the parties' motions and subsequent briefing do not seem to contest this issue.  *See, e.g.*, docket no. 43-8 at 6 (explaining that Lynn H. saw him struggle to perform simple exercises in REMEDY, which he was supposed to be knowledgeable in as a precondition for his position).

Next, Standley was subject to an adverse employment action.  The Amended Complaint alleges that Standley suffered four adverse employment actions: (1) his negative employment evaluation for 2007, (2) his "predetermined" and "unaccomplishable" PIP, (3) the notice of intent to remove, (4) and the notice of termination.  Docket no. 28 at 20.  However, the NSA argues that not all of these adverse employment actions were timely brought.  Docket no. 41 at 5.  29 C.F.R. § 1614.105(a) states that a federal employee who has been the alleged victim of discrimination "must initiate contact with [an EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action."  29 C.F.R. § 1614.105(a) (2012).  Claims of discrimination that occurred more than 45 days before the initiation of administrative action are time barred in a

subsequent action in federal court. *Pacheco v. Mineta*, 448 F.3d 783, 791 (5th Cir. 2006). But this timeline is extended if "the individual shows that . . . he or she did not know and reasonably should not have been known that the discriminatory matter or personnel action occurred . . . ." 29 C.F.R. § 1614.105(b) (2012).

Standley first contacted an EEO Counselor on June 27, 2008. Docket no. 43-1 at 34. Thus, any complaint of discriminatory action that took place before May 13, 2008, would be considered untimely under the deadline set forth in 29 C.F.R. § 1614.105(a). This would include the 2007 negative employment evaluation, which was issued on January 11, 2008, and the PIP, which began on February 26, 2008, and concluded on May 5, 2008. Docket nos. 39-2 at 37, 43-11 at 1, 39-3 at 58.[2] But Standley argues that the Court should disregard this 45-day timeline because the adverse employment actions he faced were part of a "pattern of discrimination" and he did not realize the "extent of the retaliatory conduct" until after he received his notice of intent to remove, which was sent May 13, 2008. Docket no. 44 at 15 (citing *Berry v. Board of Supervisors*, 715 F.2d 971 (5th Cir. 1983) and discussing the continuing violation doctrine). In response, the NSA contends that by Standley's own admission, he was aware of any alleged discrimination in June 2007. Docket no. 46 at 11–12. The NSA also maintains that the adverse employment actions here are discrete events not subject to the continuing violation doctrine. *Id.* at 13. The Court agrees.

Standley's own motion states that he was aware of the "discriminatory and retaliatory conduct of John M., Janice W., Lynn H., and Jeffrey R." in June 2007. Docket no. 42 at 6. Furthermore, the Fifth Circuit has clarified that for the continuing violation doctrine, "[t]he focus is on what event, in fairness and logic, should have alerted the average lay person to act to

---

[2] The parties do not argue, and the Court takes no position on whether the negative evaluation and PIP constitute adverse employment actions.

protect his rights." *Glass v. Petro-Tex Chem. Corp.*, 757 F.2d 1554, 1561 (5th Cir. 1985) (citing *Dumas v. Town of Mount Vernon*, 612 F.2d 974, 978 (5th Cir. 1980)).  The negative employment evaluation and initiation of the PIP were each discrete events that should have put Standley or any other lay person on notice.  As a result, the Court concludes that Standley's allegations related to the negative performance review for 2007 and PIP are time-barred.  *See Pacheco*, 448 F.3d at 791.  However, the notice of intent to remove and notice of termination both took place on or after May 13, 2008, and both were adverse employment actions.  *See, e.g.*, *Elizondo v. Nueces County, Texas*, Civ. Ac. No. CC-07-405, 2009 WL 603010, at *5 (S.D. Tex. Mar. 7, 2009) (explaining that a termination is an adverse employment action).  Standley has established the third element of a prima facie case of discrimination.

But finally, Standley has not pointed to a similarly-situated employee from outside of his protected class that was treated differently under circumstances "nearly identical" to his.  *See Wheeler v. BL Dev. Cor.*, 415 F.3d 399, 406 (5th Cir. 2005) (providing an explanation of the element).  His Motion for Summary Judgment does not attempt to identify any similarly-situated employee.  *See* docket no. 42.   In his Response to the NSA's Motion for Summary Judgment, he asserts that "Janice W. was a similarly-situated non-Black employee (Anglo Female) who received preferential treatment from Lynn H. and John M. in 2007, and was promoted over him in 2008."  Docket no. 44 at 17.  He states that Janice W. was granted training and he was denied training.  *Id.* at 18.  He also contends that "Lynn H.'s complaints regarding [him] in 2007 were investigated, but [his] complaints regarding Janice W. were ignored."  *Id.*  These allegations, even if true, do not indicate that a similarly-situated employee was treated more favorably under circumstances nearly identical to Standley's circumstances.

Standley has not produced any summary judgment evidence that shows he and Janice W. faced nearly identical circumstances.  The NSA does not dispute that Janice W. and Standley were similarly situated in terms of their job duties and chain of command.  Docket no. 47 at 6. However, as the NSA points out, Standley and Janice W. do not have "essentially comparable violation histories" and were vastly different in terms of their job performance.  *See Lee*, 574 F.3d at 260.  Standley has admitted that he has no knowledge of complaints about Janice W.'s performance or her ability to complete her job duties independently.  Docket no. 39-4 at 6, 7. Meanwhile, Standley had numerous performance issues and even stated himself in his Amended Complaint that he had difficulty completing his job duties.  Docket nos. 39-2 at 2 (describing the difficulty Standley had in completing basic REMEDY tasks), 39-2 at 3 (explaining that Standley did not know how to perform routine updates), 39-2 at 35 (stating that Standley did not process help desk tickets in a timely manner), 39-2 at 33 (explaining that a prototype developed by Standley was full of bugs),  28 at 9 (containing his own admission that he was "concerned about the changing criteria being requested by the customer that exceeded his programming knowledge.").

Importantly, when a difference between a plaintiff and the proposed similarly-situated employee "accounts for the difference in treatment received from the employer, the employees are not similarly situated for the purposes of an employment discrimination analysis."  *Lee*, 574 F.3d at 260. These disparities in performance show that Standley and Janice W. were not similarly-situated employees in nearly identical circumstances, and thus, any perceived favorable treatment towards Janice W. does not establish that Standley was the victim of disparate treatment based on race.  *See, e.g.*, *Glaskox v. Harris County, Tex.*, 537 F. App'x 525, 531 (5th Cir. 2013) (holding that a plaintiff failed to establish a prima facie case of discrimination when

the individuals offered by the plaintiff as similarly-situated employees did not have similar work or violation histories as the plaintiff).  As a result, Standley has not established a prima facie case of race discrimination.  This alone is enough for the Court to deny Standley's Motion for Summary Judgment and grant summary judgment in favor of the NSA on this claim.

B. Pretext or Intentional Discrimination

But even if, assuming *arguendo*, Standley had shown that he can establish a prima facie case of race discrimination, he has failed to produce sufficient evidence to permit a reasonable trier of fact to find pretext or intentional racial discrimination.  If the Court had reached a contrary conclusion above on the first-step of the *McDonnell* analysis, the burden would shift back to the NSA to "articulate a legitimate non-discriminatory reason" for the adverse employment actions Standley faced.  *See Chevron*, 570 F.3d at 615.  The NSA has done so and maintains that any adverse employment action faced by Standley was a result of his performance issues.  Docket no. 41 at 20 ("In short, the NSA proposed Plaintiff's removal from employment for inability to perform the critical elements of his job.  Given Plaintiff's numerical rating of 1.5 out of a possible 5 on his performance evaluation, and his subsequent failure to complete the PIP, the proposal for removal was fully warranted."); *see also* docket no. 39-2 at 37 (providing the official performance report for 2007 and showing the 1.50/5 rating).  The record is rife with competent summary judgment evidence supporting the NSA's contention that Standley was removed due to his poor job performance.  For example, a memorandum from Jeffrey R. explains that Standley failed to successfully complete his PIP because he did not complete his assignments.  Docket no. 39-3 at 58.  Furthermore, the notice of removal sent to Standley states the removal was based on "unacceptable performance" and explains that in none of the six weeks that the PIP was in place did Standley perform successfully.  *Id.* at 59.  Finally, the final notice of

termination from Edward C. states that the removal was due to "unacceptable performance." *Id.* at 61. Thus, the NSA has met its burden of production under this step of the *McDonnell* analysis and Standley must present evidence that would permit a reasonable jury to find "the [NSA's] proffered reason was mere pretext for racial discrimination." *Davis*, 383 F.3d at 317. He has failed to do so.

Standley argues that at this stage of the analysis, an employee can use indirect evidence to rebut the reason offered by the employer during the second stage. Docket no. 42 at 7 (citing *Valdez v. Church's Fried Chicken, Inc.*, 683 F. Supp. 596, 633 (W.D. Tex. 1988)). He also argues that "when a person with discriminatory evidence has influence over the final decision-maker, that animus may be imported to that decision maker," and thus, evidence of one employee's racial animus is sufficient to meet the plaintiff's burden in this step if that particular employee had some kind of sway over the person responsible for the adverse employment determination. *Id.* at 8 (citing *Haire v. Board of Supervisors of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356 366–67 & n. 11 (5th Cir. 2013)). These are correct statements of the law. However, Standley has provided no indirect evidence of pretext, nor has he even asserted—let alone provided summary judgment evidence—that a person with racial animus somehow influenced one of the supervisors who was responsible for any of the adverse employment actions in this case.

At one point, Standley asserts that personal conflicts he experienced with Janice W. in 2007 "were potentially related to gender and race" and that conflicts with her in 2008 "were related to his race." Docket no. 42 at 23. He believes that Janice W.'s refusal to work with him shows that there was racial animus at play. Docket no. 44 at 6. He also contends that supervisor John M. did not provide him an appropriate solution to the conflict because of his race. Docket

no. 42 at 23.  To support this contention, Standley provides a citation to his own deposition testimony, wherein he stated: "I did not approach it from a race standpoint, but I did know there were still ongoing conflicts, and John never—John did—during the meeting or after the meeting, John never provided any solution to the conflict. I *believe* it was because of my race that he did not."  *Id.* (citing docket no. 43-10 at 7) (emphasis added).  When asked why he felt his conflicts with Janice W. were due to his race, Standley replied, "That was just the way I felt."  Docket no. 43-9 at 27.  First, as previously explained, an employee's "subjective belief that discrimination occurred 'is simply insufficient to support a jury verdict in [a] plaintiff's favor.'"  *Grimes*, 102 F.3d at 140 (citing *Grizzle*, 14 F.3d at 268). Second, even if Standley had interpersonal conflicts with Janice W. that were somehow motivated by race on her part and were not addressed due to race, Standley has offered no evidence that these interpersonal conflicts had anything to do with the notice of removal he received and the notice of termination, which are the adverse employment acts at issue in this case.

Standley also claims that John M., Janice W., and Jeffrey R. "had predetermined that [he] would not successfully complete his PIP because of his race . . . ."  Docket no. 42 at 25. However, he provides no citation to any exhibit to support this claim and the Court's search of the extensive amount of summary judgment exhibits in this case found no evidence to substantiate it.  Moreover, it is unclear why any predetermination that Standley was unlikely to complete the PIP is relevant; evidence shows that he, in fact, did not complete the tasks on it. Docket no. 39-3 at 58.

Additionally, Standley argues that the NSA's "employees are sophisticated enough to avoid engaging in direct discrimination . . . by documenting their scheme or informing [Standley] of their intent to illegally deprive him of the privileges of his employment" and that

13

these NSA employees "engaged in a series of individual adverse employment acts" that "disclose their discriminatory intent."   Docket no. 48 at 2.   But he again provides no evidence for his assertions of discriminatory intent and the Court has found none in any of the exhibits provided.

Furthermore, Standley points to the fact that on certain occasions, the NSA declined to send him for further training as evidence of pretext on the part of the NSA.   Docket nos. 42 at 13, 48 at 3.   However, the NSA, did, in fact, send him to some additional training.   Docket no. 39-2 at 2.   The fact that on some other occasions the NSA did not pay for Standley to receive training he requested does not establish the NSA's stated reason for his notice of removal and termination—his poor performance—was merely pretext.

Standley also argues that the fact that some—but not all—of the members of his team had a meeting he was not invited to serves as evidence that his performance was pretext for discrimination.   Docket no. 44 at 6.   Even assuming this is true, it does not establish racial animus on the part of any of Standley's supervisors or coworkers, nor does it show that his performance issues were merely pretext for racial discrimination.   Simply put, Standley has not identified a single piece of evidence, other than his own speculation, that shows the NSA's reason for firing him—his performance—was pretext for discrimination.   His subjective belief that he was issued his notice of intent to remove and notice of termination because of his race does not establish a question of material fact regarding the NSA's motives.   *See, e.g.*, *Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 434–35 (5th Cir. 1995) (explaining that an employee's subjective belief of sex discrimination did not create a material question of fact and affirming summary judgment in favor of the employer); *Todd v. Waste Mgmt. of Texas, Inc.*, Civ. Ac. No. SA-03-CA-314-XR, 2004 WL 1465771, at *4 (W.D. Tex. June 30, 2004) ("Generalized

testimony by an employee regarding her subjective belief is insufficient to make an issue for the jury.").

The Court finds that Standley has failed to establish a prima facie case of discrimination, and even if he had, that he has failed to provide any evidence that would permit a reasonable trier of fact to find pretext or intentional racial discrimination on the part of the NSA. Thus, the NSA is entitled to judgment of a matter of law on this claim. With respect to the claim for race discrimination, Standley's Motion for Summary Judgment is denied and the NSA's Motion for Summary Judgment is granted. This claim is dismissed.

## III.    Retaliation

Standley's Amended Complaint also brings a claim for retaliation. Docket no. 28 at 22. "Title VII prohibits retaliation against employees who engage in protected conduct, such as filing a complaint of discrimination." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 325 (5th Cir. 2002). Just as with race discrimination claims, claims for retaliation based on circumstantial evidence are analyzed under the *McDonnell* framework. *Wheat v. Florida Par. Juvenile Justice Com'n*, 811 F.3d 702, 705–06 (5th Cir. 2016) (citing *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 768 (5th Cir. 2001); *Chaffin v. John H. Carter Co.*, 179 F.3d 316, 319 (5th Cir. 1999)). Since—as he seems to concede—Standley has presented no direct evidence of retaliation, he must again rely on the *McDonnell* analysis. *See id.*

First, the plaintiff must set forth a prima facie case of retaliation. *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005). To do so, he must establish: (1) he engaged in protected activity; (2) the employer took a materially adverse action against him; and (3) a causal link exists between the protected activity and the adverse action. *Wheat*, 811 F.3d at 705 (citing *Davis v. Fort Bend Cnty.*, 765 F.3d 480, 489–90 (5th Cir. 2014), *cert. denied*, —— U.S. ——,

135 S.Ct. 2804 (2015)).  The Supreme Court has clarified that "materially adverse actions" for the purposes of retaliation claims are "not limited to discriminatory actions that affect the terms and conditions of employment." *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006).  Rather, a plaintiff claiming retaliation under Title VII must show that a reasonable employee would have considered the action "materially adverse" in that "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (citations omitted).  But "petty slights, minor annoyances, and simple lack of good manners will not" deter a reasonable employee from making a charge of retaliatory discrimination, and thus, they are not conduct that is "materially adverse." *Id.*  Furthermore, "[t]o establish a causal link between the protected activity and the adverse employment decision, the evidence must demonstrate that the decision maker had knowledge of the protected activity." *Tureaud v. Grambling State Univ.*, 294 F. App'x 909, 914–15 (5th Cir. 2008) (citing *Watts v. Kroger Co.*, 170 F.3d 505, 512 (5th Cir. 1999)).

Second, once the plaintiff establishes a prima facie case of retaliation, the burden of production shifts to the employer to state a legitimate, non-retaliatory reason for the employment action.  *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013).  Finally, if the employer satisfies this burden, then the plaintiff must show that the employer's stated reason is merely pretext for unlawful retaliation.  *Id.* (citing *Septimus*, 399 F.3d at 607).  At this point, summary judgment in favor of the employer is appropriate unless the plaintiff can raise a genuine dispute of material fact as to whether the employer's rationale is pretextual.  *Id.* at 609.  Just as with race discrimination claims, a plaintiff's own subjective belief that the employer's proffered reason is pretext is not sufficient to establish an issue of material fact.  *See Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 408 (5th Cir. 1999).  Furthermore, a plaintiff asserting

a retaliation claim must meet a higher standard of causation than a plaintiff asserting a claim for race discrimination.  *Univ. of Texas Sw. Med. Ctr. v. Nassar*, —— U.S. ——, 133 S. Ct. 2517, 2533 (2013).  Such a plaintiff "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Id.* at 2534.  "In order to avoid summary judgment, the plaintiff must show 'a conflict in substantial evidence' on the question of whether the employer would not have taken the action 'but for' the protected activity." *Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (quoting *Long v. Eastfield Coll.*, 88 F.3d 300, 308 (5th Cir. 1996)).

A. Prima Facie Case

Standley has not established a prima facie case of retaliation.  First, it is undisputed that Standley engaged in protected activity.  "Protected activity" is defined as opposition to any practice made unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII.  *Green v. Administrators of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002), *as amended on denial of reh'g and reh'g en banc* (Apr. 26, 2002) (citing 42 U.S.C. § 2000e–3(a)).  The NSA has conceded that Standley engaged in protected activity by filing a formal EEO complaint of discrimination on August 17, 2004, after he was not promoted, and another formal complaint on April 15, 2005, which contained allegations that Standley was harassed by his supervisor and a contractor, accused of theft, put on a PIP, and given a negative performance review.  Docket no. 15 at 3.  This prior activity occurred in an office in England with a different set of supervisors and team members, but still constitutes protected activity for the purposes of a retaliation claim. *See* docket no. 39-4 at 76.  Standley also claims he filed an "informal" complaint of discrimination against his then-supervisor, Wayne S., in 2001 after he was not promoted in an

office located in Korea.  Docket no. 28 at 5.

Next, Standley has established that the NSA took a materially adverse action against him. Standley asserts in his Motion for Summary Judgment that the NSA took materially adverse actions against him when "John M. found that he had not successfully completed his 2007 Performance Plan Objectives," when he was placed on a PIP, and when he was terminated. Docket no. 25 at 29.  Each of these would constitute materially adverse actions, and it is undisputed that these actions occurred.  *See Burlington*, 548 U.S. at 68; docket no. 39-2 at 37; docket no. 39-3 at 1; docket no. 39-3 at 61.

But finally, Standley has failed to show that there is a remaining issue of material fact as to whether there is a causal link between his prior EEO activity and the materially adverse actions taken by the NSA.  A plaintiff must show a causal connection between the materially adverse action and the protected activity to survive summary judgment.  *See Davis*, 765 F.3d at 491.

Standley has presented differing theories throughout this case regarding causation for his retaliation claim.  In his Motion for Summary Judgment, he attempts to show that there is a causal link between any knowledge Wayne S., his supervisor in Korea, had about Standley's prior EEO activity and his negative performance evaluation for 2007, the subsequent PIP, and the termination process that led to his resignation.  Docket no. 42 at 26.  He theorizes that when John M. was informed that Standley was being recalled back to Maryland, he embarked on an investigation to determine why and questioned each of Standley's previous supervisors.  Docket 42 at 26.  Standley then concludes that John M. must have had a conversation with Wayne S. at some point in time wherein Wayne S. told John M. about Standley's prior EEO activity.  *Id.* at 26–27.  He cites an email John M. sent to someone on August 23, 2007, that states the following:

> I am David's current supervisor, and Jeff R[redacted] is the D/Dir of IT. Since I see you work in the OGC office, you should also know we have been actively monitoring David's lack of performance through HR procedures, to include placing him on a PIP. We are really trying to release him, if he can't perform. As we found out too late, he also has a very poor track record from several other jobs. If you can tell me, I would appreciate knowing what this "recall" is about, especially if it relates to issues that could affect his employment status.

Docket no. 43-4 at 30.  The recall in question in the email was so Standley could testify at the administrative hearing for his 2004–2005 consolidated discrimination complaints.  Though not relevant to Standley's ability to establish a causal link, this hearing was cancelled and Standley was never recalled.  Docket no. 39-4 at 28.  Standley asserts that he is unaware if John M. received a response to this email, and there is none in the exhibits presented to the Court from either party.  *Id.* at 30.

Standley posits that after sending the email, John M. was motivated to investigate Standley's background and contacted several of his former supervisors.  Docket no. 42 at 26. However, to support this claim, he cites to pages of John M.'s testimony wherein John M. simply states that he spoke to some of Standley's supervisors prior to hiring him, that after Standley began to have performance issues in Texas he heard stories of Standley's poor performance in other locations from individuals he could not recall, and that at some point in time—though he could not remember when—he had a conversation with Wayne S. about Standley but could not recall the exact subject matter.  Docket no. 43-3 at 260–82.  When asked if the only topic of the conversation was Standley's job performance, he answered yes.  *Id.* at 264.

None of the testimony cited provides any support to the idea that John M. began an investigation of Standley after he learned about the recall, nor does it offer any kind of evidence that Wayne S. informed John M. about Standley's prior EEO activity.  John M. states that he

does not remember how or when he learned that Standley had EEO activity.  *Id.* at 272–73.

Furthermore, Wayne S. did not learn of Standley's EEO activity until 2015.  Docket no. 39-4 at

359.  Indeed, Standley has confirmed that he only filed a confidential, informal complaint against

Wayne S.  and, after speaking to a counselor, chose not to pursue the matter.  Docket no. 28 at 5.

Standley has offered no evidence that supports his theory that Wayne S. told John M. of

Standley's prior EEO activity. Moreover, even if there was any piece of evidence that indicated

Wayne S. told John M. of any prior protected activity by Standley, there is no evidence that this

information caused John M. to retaliate against Standley or resulted in the materially adverse

employment actions listed above.

The testimony of John M. does show that at some unknown point in time, he became

aware of Standley's previous protected activity.  Docket no. 43-3 at 272.  To establish a causal

link, a plaintiff must produce evidence demonstrating that the materially adverse action was

taken at least in part on the knowledge of the plaintiff's EEO activity.  *Ackel v. Nat'l Commc'ns,*

*Inc.*, 339 F.3d 376, 385–86 (5th Cir. 2003).  But "mere knowledge" is not sufficient alone to

establish a prima facie case for retaliation.  *See Hutto v. Univ. of Houston Sys.*, Civ. Ac. No. V-

05-70, 2008 WL 4453427, at *7 (S.D. Tex. Sept. 28, 2008).  Temporal proximity between an

employer's knowledge of protected activity and an adverse employment action can serve, in

some instances, as indirect evidence of a causal link.  *Strong v. Univ. Healthcare Sys., L.L.C.*,

482 F.3d 802, 808 (5th Cir. 2007).  The proximity between the employer's knowledge and the

adverse employment action must be very close.  *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268,

273 (2001).  However, there is no evidence that establishes a close temporal proximity in this

case between John M.'s knowledge and the adverse employment actions in which John M. was

involved, other than Standley's own subjective belief.  While a plaintiff's burden to establish a

prima facie case of retaliation is not an arduous one, mere speculation is insufficient to establish a genuine issue of fact. *See, e.g.*, *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 426–27 (5th Cir. 2000).

Standley also attempts to establish a causal link between his previous EEO activity and his negative performance review, notice of intent to remove, and notice of termination by alleging that Lynn H. had knowledge of his prior protected activity.  Docket no. 42 at 27.  This assertion is in fact supported by Lynn H.'s testimony.  Docket no. 43-5 at 21.  She states that she was told that Standley had filed an EEO complaint and that he was known in the EEO office by individuals named Mary S. and Claire S., respectively.  *Id.*   However, Lynn H.'s knowledge alone does not establish a causal link.   Standley has not produced any evidence that this knowledge caused Lynn H. to retaliate against him.   Moreover, Standley cannot argue that a close temporal proximity between Lynn H.'s awareness and the adverse employment acts he complains of creates a question for the jury—Lynn H.'s unrebutted testimony is that she was first told of Standley's activity sometime prior to April of 2007.  *Id.*   The first materially adverse act in this case—the negative performance review—took place on January 11, 2008, nine months after the evidence shows Lynn H. learned of Standley's EEO activity.   Thus, the events are too distant to establish a causal link based on temporal proximity.  *See Breeden*, 532 U.S. at 273 (emphasizing that the temporal proximity must be "very close" and favorably citing cases that held three and four month gaps in time were too large to establish causation).   It is also unclear what, if any, responsibility Lynn H. had for the materially adverse acts—she did not place Standley on the PIP, sign off on his evaluation, or make the decision to terminate him.   Those decisions were made by John M., Jeffrey R., John K., and Edward C.  *See* docket nos. 39-2 at 31; 39-3 at 4; 39-3 at 60; 39-3 at 61.

Standley's Motion for Summary Judgment and Amended Complaint also offer a theory that his coworkers and supervisors gained access to emails and documents about his previous EEO activity because this information was stored on the NSA's server.  Docket nos. 28 at 7; 42 at 3.  He argues that when he transferred locations, all of his files and emails from his previous locations became available on the Texas server.  Docket no. 28 at 7.  He theorizes that because of this, his "prior EEO activity was available to all employees and supervisors who had access to the Texas facility server" and thus Lynn H., John M., and Jeffrey R. could have potentially looked at the information and then decided to retaliate against him.  *Id.*  This theory is pure speculation.  Standley does not even assert that he believes his files were actually accessed, just argues that they could have been.  He has not produced one piece of summary judgment evidence—direct or indirect—to support this hypothesis, and thus it cannot establish a prima facie case of retaliation.

Finally, in his Response to the NSA's Motion for Summary Judgment, Standley argues that two other supervisors had knowledge of his prior EEO activity and retaliated against him.  Docket no. 44 at 21.  He states that "facts indicate that Janice W. and Jeffrey R. were aware of [his] prior EEO activity" and that "[a] fact issue remains as to whether their knowledge of [his] prior EEO activity influenced the decisions they made regarding him."  *Id.*  He goes on to argue that "[t]here is sufficient circumstantial evidence which supports the conclusion that their knowledge of [his] prior EEO activity did influence their decision, due to their efforts to hide such knowledge."  *Id.* at 21–22.  However, Standley cites no evidence to support this claim, nor does he provide any specific factual allegations despite claiming that he is in possession of such facts.  His speculation does not establish a causal link and therefore he has failed to establish a prima facie case of retaliation.  *See Septimus*, 399 F.3d at 611.  Accordingly, he has not only

failed to show he is entitled to judgment as a matter of law on this claim but has failed to satisfy his burden in response to the NSA's Motion for Summary Judgment.  The Court grants summary judgment in favor of the NSA on this claim.

## B. Pretext or Intentional Retaliation

In the interest of completeness, the Court notes that even if Standley had established a prima facie case of retaliation, he has produced no competent evidence that would allow a reasonable juror to find that the NSA's reasons for his negative performance review, PIP, and termination were pretext for retaliation.  At this stage of the *McDonnell* analysis, the burden shifts back to the NSA to articulate a legitimate, non-retaliatory reason for the materially adverse employment actions it undertook against Standley.  *See Royal*, 736 F.3d at 400.  In the NSA's Motion for Summary Judgment and its Response to Standley's Motion for Summary Judgment, they contend that Standley's negative performance evaluation, PIP, and the subsequent termination process were due to his "inability to perform the critical elements of his job" and numerous performance deficiencies.  Docket nos. 41 at 20; 46 at 2.  This assertion is supported by the NSA's evidence.  *See, e.g.*, docket nos. 39-3 at 58 (explaining that Standley did not complete his PIP assignments successfully); 39-3 at 59 (stating that the removal was for unacceptable performance); 39-3 at 219–39 (documenting several months of errors, deficiencies, and professional blunders); 39-3 at 61 (stating that the final decision to terminate was based on performance).  The NSA has met its burden to produce evidence of a legitimate, non-retaliatory reason for the materially adverse actions Standley faced.  Now, the burden shifts back to Standley to show that this reason is simply pretext.  *Royal*, 736 F.3d at 400 (citing *Septimus*, 399 F.3d at 607).  But Standley has cited no evidence suggesting his prior EEO activity was even a motivating factor in his negative performance evaluation, PIP, and subsequent termination, much

less evidence that indicates the NSA would not have implemented these actions but for his protected activity.  *See Nassar*, ––– U.S. ––––, 133 S. Ct. at 2533–34.

Standley's Motion for Summary Judgment attempts to set forth several potential arguments to show that his poor performance was simply an excuse to fire him in retaliation for his prior EEO activity.  First, he maintains that the NSA did not follow its own internal policies when it issued his negative performance review for 2007.  Docket no. 42 at 13.  He argues that his job duties "substantially changed" in November 2007 and that his evaluation for 2007 was based on his duties for January 2007 to November 2007, instead of reflecting his performance for November and December of 2007.  *Id.* at 13–14.  But Standley's own evidence in support of this argument does not reflect this theory.  He cites to testimony from John M. that states that John M. merely simplified his duties in November 2007 to lessen his workload in the hopes that he would have an easier time completing his job successfully.  Docket no. 43-3 at 234–236.  But even if Standley's job duties were substantially changed in November 2007, it is unclear why it would be improper for an employer to base a large part of an employee's annual evaluation on the job duties they had performed for 11 months of the year.

Standley also complains that a significant portion of his performance review contained input from Lynn H., who stopped supervising him in June of 2007.  Docket no. 42 at 15.  But this is not evidence of pretext on the part of the NSA.  Given that Lynn H. supervised him for nearly half the year, it makes sense that her feedback would have been incorporated and considered in the construction of his review.

Standley also asserts that there was "no independent investigation by Jeffrey R., Lt. Col. Todd S., and Edward C." of the decision to place him on the PIP and the decision to terminate him.  *Id.* at 16.  He argues that these individuals "rubber stamped" the determinations of John M.,

Jeffrey R., and Janice W.  *Id.*  However, he provides no evidence to support this argument.  Even if he had provided summary judgment evidence indicating that was true, it would not establish that he was terminated for reasons other than his poor performance.

Additionally, Standley argues that Jeffrey R. ignored weekly emails called The Weekly Report that were sent to him about the progress of Standley's team when he approved John M.'s performance evaluation of Standley.  Docket no. 42 at 17.  The Court reviewed The Weekly Reports provided as exhibits.  These are not evaluations of Standley or any other individual's performance, they are simply bullet point lists of what was happening in the IT team each week. Standley is not mentioned by name in any of the emails with the exception of a few notations that he would be out on leave for some weeks.  The fact that Jeffrey R. states he did not look at them before reviewing John M.'s evaluation of Standley provides no evidence of pretext on the part of the NSA.

Next, Standley cites to some emails he sent to Jeffrey R. on something called the FIXIT application.  He argues that Jeffrey R.'s failure to consider his work with the FIXIT application shows that the NSA fired him for retaliatory reasons.  Standley claims that Jeffrey R. stated that Standley "resolved the FIXIT application problem."  However, the testimony Standley cites does not say that, nor does it seem to even be related to FIXIT.  Standley cites page 165, lines 17–19 of Jeffrey R.'s testimony.  On lines 17–18, Jeffrey R. states that the exhibit in front of him does not discuss REMEDY, and line 19 is the beginning of a question from Standley's counsel.

Finally, Standley also contends that the NSA's proffered reason for his evaluation, PIP, and termination is mere pretext he because he did not receive training he requested and John M. and Janice W. "predetermined" that he would fail his PIP.  But as explained above, the NSA did send him to some training and Standley cites absolutely no evidence that anyone made any kind

of predetermination about his PIP process. *See* docket no. 39-2 at 2.  The fact that on some other occasions the NSA did not pay for Standley to receive his requested training does not establish the NSA's stated reason for his notice of removal and termination—his poor performance—was merely pretext, nor would any prejudgment of Standley's ability to complete his PIP.

Simply put, Standley has produced no evidence, indirect or otherwise, that the NSA took materially adverse actions against him for retaliatory reasons.  He has failed to "establish that [his] protected activity was a but-for cause" of his negative performance evaluation, PIP, and termination.  *See Nassar*, —— U.S. ——, 133 S. Ct. at 2533–2534.  After reviewing the record, the Court concludes that Standley was unable to establish that a question of material fact exists on this issue and that no reasonable juror would find that the NSA based its actions on anything other than Standley's performance.  His own subjective beliefs about his performance and the NSA's rationale is simply not sufficient to show a question of material fact.  *See Shackelford*, 190 F.3d at 408.  Since he has not shown "'a conflict in substantial evidence'" on the issue of whether the NSA would have taken the materially adverse actions he complains of if not for his prior EEO activity, summary judgment in favor of the NSA is appropriate.  *Feist*, 730 F.3d at 454 (citing *Long*, 88 F.3d at 308).

The Court concludes that Standley has failed to both show a prima facie case of retaliation and to provide any evidence that would permit a reasonable trier of fact to find pretext on the part of the NSA. With respect to the retaliation claim, Standley's Motion for Summary Judgment is denied and the NSA's Motion for Summary Judgment is granted.  This claim is dismissed.

IV.     **Hostile Work Environment**

Finally, Standley brings a claim for hostile work environment.  Docket no. 28 at 23.  His Amended Complaint alleges that he was subject to a hostile work environment in five ways: (1) he was issued a negative performance review, (2) the PIP was "predetermined unaccomplishable," (3) he was both required to participate in a meeting and was at other times not told about a meeting, (4) the notice of intent to remove, and (5) the notice of intent to terminate.  *Id.* at 23–24.  Additionally, his Motion for Summary Judgment maintains that Janice W. was "bullying [him] and engaging in other unprofessional and ethical conduct towards him." Docket no. 42 at 5.

Title VII is violated if a workplace is filled with "discriminatory intimidation, ridicule, and insult" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citing *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 65, 67 (1986)).  To prevail on a hostile work environment claim, a plaintiff must establish that: (1) he is a member of a protected group; (2) he was subject to unwelcome harassment; (3) the harassment complained of was based on his membership in the protected group; (4) the harassment affected a term, condition, or privilege of his employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.  *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (citing *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)).

The plaintiff must subjectively perceive the harassment as sufficiently severe or pervasive, and this subjective perception must be objectively reasonable.  *Id.* (citing *Harris*, 510 U.S. 17).  In determining if conduct constitutes a hostile work environment, courts must consider

the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, and whether it unreasonably interfered with the plaintiff's job performance. *Id.* To establish the fourth element, the harassment must be "sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment." *Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999). If the conduct alleged by the plaintiff is not severe or pervasive, summary judgment should be granted for the defendant. *Butler v. Ysleta Ind. Sch. Dist.*, 161 F.3d 263, 269–70 (5th Cir. 1998).

The Fifth Circuit has previously held that a poor performance evaluation, even when combined with other incidents, does not give rise to a hostile work environment. *Kang v. Bd. of Supervisors of La. State Univ.*, 75 F. App'x 974, 977 (5th Cir. 2003). In *Kang*, an Indian professor brought a claim for hostile work environment against Louisiana State University after he was given a bad performance review, was written-up, received a low pay raise, was not nominated for a teaching award, and was criticized at a faculty meeting in front of his peers. *Id.* at 975–76. The court explained that these actions were not severe or pervasive enough to create an abusive working environment and affirmed the district court's summary judgment in favor of the university. *Id.*

Similarly, threats of termination and other disciplinary actions are not sufficient to establish a hostile work environment if they are not based on the employee's race. *Harris-Childs v. Medco Health Sols., Inc.*, 169 F. App'x 913, 917 (5th Cir. 2006). In *Harris-Childs*, an African American research pharmacist alleged that being disciplined, threats of termination, unfavorable scheduling, and unrealistic performance expectations constituted a hostile work environment. *Id.* She admitted during a deposition, however, that she did not ever hear a racist or racial remark during her employment. *Id.* The Fifth Circuit agreed with the district court's conclusion and

found that the pharmacist had not produced evidence that would permit a jury to conclude that the conduct complained of was harassment or that it was harassment based on race.  *Id.*  As a result, it upheld summary judgment in favor of the employer.  *Id.*

In this case, it is undisputed that Standley, as an African American, is a member of a protected group.  Docket no. 41 at 2.  However, he has not produced any evidence or alleged any specific facts that establish the other four elements of a claim for hostile work environment.  Just as the poor performance evaluation in *Kang* and the disciplinary actions in *Harris-Childs* did not constitute harassment, Standley's complaints about his negative performance review, PIP, notice of intent to remove, and notice of intent to terminate do not constitute harassment, let alone harassment that is so "severe and pervasive" it constitutes an "abusive working environment." *Watts*, 170 F.3d at 509.  Furthermore, his allegations that he was forced to attend one meeting and not invited to another are vague, unspecific, and even if substantiated would not serve as hallmarks of a hostile work environment or serve as evidence of harassment.

Standley states in his Response to the NSA's Motion for Summary Judgment that between May of 2007 and December of 2007, he reported to his supervisors that Janice W. stood over him while he worked, took credit for his work, called him angry, attempted to supervise him, bullied him, and "engaged in other unprofessional and unethical conduct towards him."  To support this assertion, he cites to paragraph 49 of his own motion for summary judgment.  That paragraph cites sections of the deposition testimony of supervisor John M., the deposition testimony of Standley, the deposition testimony of Janice W., and Standley's affidavit.  Docket no. 42 at 24.

The testimony from John M. simply states that Standley had "trouble working with Jan" and that Standley discussed it with him.  Docket no. 43-3 at 120.  John M.'s conclusion was that

"they just conflicted a little bit" because Jan wanted things done quickly and Standley "was a little slower paced." *Id.* Standley's testimony provides that he "had issues with Jan coming to [his] desk, standing over [him], requesting information." Docket no. 43-10 at 6. He was upset that Janice W. "insisted that [he] stop whatever [he] was doing and give her answers." *Id.* He also states that there were "other issues" but does not specify any or provide examples. *Id.* The testimony Standley cites from Janice W. states that she decided to work on a project, told John M., informed Standley, asked Standley to work on a different project, and that this angered Standley. Docket no. 43-7 at 83–84.

Standley also maintains that Janice W. failed to provide him clear PIP objectives, did not serve as an effective mentor, and refused to answer his questions while she supervised his PIP. Docket no. 44 at 29. To support this assertion, he cites to pages of the deposition testimony of Jeffrey R. *Id.* The portions of the testimony cited indicate that Jeffrey R. saw Janice W. hand Standley some notes off of a copier, that Janice W. encouraged Standley to complete work instead of attending a picnic and Jeffrey R. thought this was a good idea, and that Jeffrey R. felt the PIP objectives were easy to complete. Docket no. 43-2 at 207, 210, 211. None of the testimony shows that Janice W. was an ineffective supervisor of Standley during the PIP process.

Standley's allegations and the evidence he provides—even if viewed in the light most favorable to him—do not indicate that Janice W. harassed Standley. The facts simply indicate that two co-workers had different work styles and that this occasionally caused some small personal conflicts. Even if the Court were to find that the incidents constituted harassment, they were not "sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment." *Watts*, 170 F.3d at 509.

Additionally, Standley has produced no evidence that any of the actions he complains of to support his hostile work environment claim were based on his status as an African American. Thus, even if any of the incidents discussed above, or some combination thereof, was indicative of severe harassment, he would still fail to present evidence that would allow a reasonable juror to conclude that he was subject to a hostile work environment. *See, e.g.*, *McCray v. DPC Indus., Inc.*, 942 F. Supp. 288, 293 (E.D. Tex. 1996) ("To establish a prima facie case of 'hostile work environment' based on race, a plaintiff must show more than he was treated badly and that he was black. . .").  The NSA has shown that it is entitled to judgment as a matter of law on Standley's hostile work environment claim.  This claim is dismissed.

## CONCLUSION

Plaintiff David W. Standley's Motion for Summary Judgment (docket no. 42) is DENIED.  Defendant Michael S. Rogers's Motion for Summary Judgment (docket no. 41) is GRANTED.  Plaintiff's claims are hereby DISMISSED WITH PREJUDICE.  The Clerk is directed to issue a Judgment in favor of the Defendant, and that Plaintiff take nothing on his claims.  Defendant shall submit his Bill of Costs within 14 days in the form directed by the Clerk should it desire to pursue these costs.

It is so ORDERED.

SIGNED this 15th day of August, 2016.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE